IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-cv-00369-BO

| | |
|---|---|
| FELICITY M. TODD VEASEY and SECOND AMENDMENT FOUNDATION, INC., <br>     Plaintiffs, <br><br> v. <br><br> BRINDELL B. WILKINS, JR., in his official capacity as Sheriff of Granville County, North Carolina <br><br>     Defendant. | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |

Pursuant to Rules 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure and Local Civil Rule 7.1, Defendant Brindell B. Wilkins, Jr., ("Sheriff Wilkins") respectfully moves the Court for an Order dismissing the Complaint of Plaintiffs Felicity M. Todd Veasey ("Veasey") and the Second Amendment Foundation, Inc. ("SAF").

## INTRODUCTION

The Complaint challenges the constitutionality of North Carolina's regulatory scheme for concealed carry permits. Rather than sue the State or its appropriate official, however, Plaintiffs have sued one of the 100 local sheriffs charged with enforcing this State law. Plaintiffs fail to appreciate that 42 U.S.C. § 1983 does not sanction this practice.

A Section 1983 plaintiff cannot identify a State law that is unconstitutional, single out one of the local officials charged with enforcing it, bring a lawsuit against that local official, and expect to have his attorney's fees paid by the County under 42 U.S.C. § 1988, the fee-shifting statute for Section 1983 claims. When plaintiffs challenge the constitutionality of a State law under Section 1983, they have two options: (1) bring a declaratory judgment action against an

appropriate State official in federal court[1]; or (2) bring a declaratory judgment against the State directly in state court. There is no "third option" of traveling from county to county, filing up to 100 lawsuits against all of North Carolina's local sheriffs, and collecting attorney's fees from each County as a "prevailing party" under 42 U.S.C. § 1988. As the U.S. Supreme Court and the Fourth Circuit have made clear, that is not how Section 1983 works. For this reason alone, the Complaint should be dismissed in its entirety so that Plaintiffs can properly re-file this lawsuit against an appropriate Defendant.

For similar reasons, the Complaint should be dismissed for failure to join the State as a necessary party and because Plaintiffs failed to file the statutorily-required Notice of Constitutional Question and serve it on the State. In addition, while the Court need not reach the constitutional issues on the merits, Plaintiffs' Second Amendment challenge (Count 2) should be dismissed because the carrying of concealed firearms is not protected by the Second Amendment.

Plaintiffs' Complaint should be dismissed in its entirety.

## STATEMENT OF RELEVANT FACTS[2]

Under North Carolina law, one of the criteria for obtaining a concealed carry permit is U.S. citizenship. *See* N.C. Gen. Stat. § 14-415.12(a)(1). Plaintiff Veasey is not a U.S. citizen and desires a concealed carry permit. (Complaint at ¶ 8-10). Plaintiff SAF is a Washington State organization with 650,000 members nationwide that advocates in favor of firearm ownership and possession. SAF alleges a tenuous connection with the instant dispute, stating

---

[1] In doing so, a Section 1983 Plaintiff can seek prospective relief under *Ex Parte Young*, 209 U.S. 123 (1908), thus avoiding the Eleventh Amendment's prohibition against suing the State directly in federal court.

[2] For purposes of a 12(b)(6) motion, Sheriff Wilkins is required to accept as true the well-pleaded factual allegations of the Complaint. Therefore, the facts set forth herein reflect only Plaintiffs' allegations.

that "[m]embers of SAF who are legal residents yet non-citizens would carry loaded and functional concealed handguns in public for self-defense, but refrain from doing so because they understand it is impossible for a non-citizen to obtain a concealed carry permit." *Id.* at ¶ 14.

Under North Carolina's comprehensive regulatory scheme for concealed carry permits, the local sheriff in each county is required to process applications and apply the State's eligibility criteria. *See generally* N.C. Gen. Stat. § 14-415.10, et seq. If the applicant is not a U.S. citizen, then State law requires the sheriff to deny the permit. *See* N.C. Gen. Stat. § 14-415.15(c) (requiring that the "application for a permit *shall* be denied [by the sheriff] if the applicant fails to qualify under the criteria listed in this Article") (emphasis added).

Sheriff Wilkins is the Sheriff of Granville County. Therefore, Sheriff Wilkins is "charged with" enforcing N.C. Gen. Stat.§ 14-415.12(a)(1). (Complaint at ¶ 16). As required by State law, Sheriff Wilkins could not and cannot issue Plaintiff Veasey a concealed carry permit because she is not a U.S. citizen and therefore does not meet the eligibility criteria under N.C. Gen. Stat.§ 14-415.12(a)(1). (Complaint at ¶ 12). Nevertheless, Plaintiff Veasey "attempt[ed] to apply for a concealed carry permit." *Id.* In an effort to help Plaintiff Veasey save herself the non-refundable application fee, Sheriff Wilkins' Office advised Plaintiff Veasey that under State law, she would be ineligible for a permit. *Id.* Plaintiffs then brought this lawsuit to challenge the constitutionality of N.C. Gen. Stat.§ 14-415.12(a)(1). Rather than sue the State or the appropriate State official, however, Plaintiffs sued only Sheriff Wilkins.

The Complaint makes clear that Plaintiffs are challenging State law, not a local ordinance or policy of Granville County or Sheriff Wilkins. The Complaint seeks an injunction enjoining "the State of North Carolina's prohibition . . . pursuant to N.C. Gen. Stat. § 14-415.12(a)(1)," *id.* at ¶ 1, challenges "the State's ban on non-citizens obtaining a concealed carry license," *id.* at ¶ 4,

alleges that the laws being challenged "were enacted in the State capital in this District," *id.* at ¶ 7, and alleges that it is "the laws of North Carolina" – and not Granville County – that prohibit Plaintiffs from obtaining a permit, *id.* at ¶ 3.

## STANDARD OF REVIEW

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint must present "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ARGUMENT

I. **SECTION 1983 DOES NOT PERMIT PLAINTIFFS TO CHALLENGE THE CONSTITUTIONALITY OF A STATE STATUTE BY SUING ONE OF THE 100 LOCAL SHERIFFS WHO ARE REQUIRED TO ENFORCE IT.**

Under the U.S. Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), local government officials can only be sued under Section 1983 when they are acting pursuant to the local government's "policy or custom." *See id.* at 694; *see Hafer v. Melo*, 502 U.S. 21, 25 (1991) (holding that this requirement applies to Section 1983 actions against local officials "[b]ecause the real party in interest in an official-capacity suit is the governmental entity and not the named official," and therefore "the entity's policy or custom must have played a part in the violation of federal law"); *L.A. County v. Humphries*, 562 U.S. 29, 451 (2010) (holding that the local "policy or custom" requirement applies to Section 1983 lawsuits where, as here, the plaintiff seeks prospective injunctive relief as opposed to damages).

Therefore, as the Fourth Circuit and other Circuits have made clear, a local government official cannot be held liable under Section 1983 for merely enforcing State law because this

4

does not constitute a "policy or custom" of the local government. *Bockes v. Fields*, 999 F.2d 788, 791 (4th Cir. 1993), *cert. denied*, 510 U.S. 1092 (1993); *Vives v. City of New York*, 524 F.3d 346, 351-352 (2d Cir. 2008) (summarizing decisions and noting that the Fourth Circuit in *Bockes*, as well as the Seventh, Ninth, Tenth, and Eleventh Circuits, are all in agreement that local governments cannot be held liable for merely enforcing mandatory state law over which they have no discretion); Schwartz & Kirklin, *Section 1983 Litigation: Claims and Defenses*, § 7.09 at 7-57 (citing *Bockes* as one of many decisions holding that "[t]he mere fact that a municipality enforces state law does not justify the imposition of Section 1983 municipal liability"); *see also, e.g.*, *Whitesel v. Sengenberger*, 222 F.3d 861, 872 (10th Cir. 2000) (holding that local government officials "cannot be liable for merely implementing a policy created by the State"); *West v. Congemi*, 28 F. Supp. 2d 385, 394-95 (E.D. La. 1998) (summarizing decisions and noting that "[t]he Fifth Circuit has long recognized that simply following the mandatory dictates of state law cannot form a predicate for *Monell* liability").

This well-settled aspect of Section 1983 jurisprudence rests on two important policies. First, it faithfully tracks the U.S. Supreme Court's decision in *Monell*. *See, e.g.*, *Surplus Store & Exchange, Inc. v. City of Delphi*, 928 F.2d 788, 791-92 (7th Cir. 1991) ("If the language and standards from *Monell* are not to become a dead letter, such a 'policy' [of enforcing state law] simply cannot be sufficient to ground liability against a municipality."). Second, it "has the virtue of minimizing the occasions on which federal constitutional law, enforced through section 1983, puts local government at war with state government." *See, e.g.*, *Bethesda Lutheran Homes and Services, Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998).

Thus, in *Bockes*, the Fourth Circuit held that a county in Virginia could not be liable under Section 1983 for merely enforcing Virginia state law. *Bockes* at 791. There, the County

5

had fired an employee pursuant to termination procedures and criteria that were prescribed by the State. Even though the State procedures allowed the County Board some degree of discretion, the Fourth Circuit held that there could be no Section 1983 liability under *Monell*. *Id.* As the Court explained:

> The district court found the Board's firing of Ms. Bockes to represent the 'official policy' of Grayson County, because the County had the power to hire and fire the members of the Board. The County argues that this analysis is misfocused, because the Commonwealth, not the County, sets personnel policy for the Board.
>
> We agree with the County. . . . In Virginia, neither the County nor the local boards have authority to set 'general goals and programs' for social services personnel; that authority is reserved for the State Board. *See* Va. Code §§ 63.1-26. The State Board has wielded this authority by publishing a comprehensive personnel handbook, which the local boards must follow. Among other things, this handbook requires the local boards to apply merit criteria in their personnel decisions. It even prescribes the grievance procedure that Ms. Bockes used in this case. In short, the Grayson County Board enjoyed its discretion to fire Ms. Bockes at the prerogative of and within the constraints imposed by the Commonwealth. Such bounded, state-conferred discretion is not the 'policymaking authority' for which a county may be held responsible under § 1983.

*Id.*

Here, the Plaintiffs' lawsuit is even more unfounded than the action rejected by the Fourth Circuit in *Bockes*. At least in *Bockes* the plaintiffs had a good faith argument that because State law gave the county some degree of discretion, the county was involved in a "policymaking" decision under *Monell*. Even then, the Fourth Circuit had little difficulty rejecting that argument. Here, the Complaint does not even allege that Sheriff Wilkins has any discretion to exercise in the decision of whether to issue a permit. Indeed, under North Carolina law, he does not.

As the Complaint admits, the State's comprehensive regulatory scheme for concealed carry permits requires local sheriffs to apply certain eligibility criteria. Complaint at ¶ 16

6

(admitting that Sheriff Wilkins is the "authority charged [by the State] with processing and issuing concealed carry permit applications" and is merely "responsible for enforcing certain of North Carolina's laws, customs, practices, and policies, specifically including N.C. Gen. Stat. § 14-415.12(a)(1)"); *see generally* N.C. Gen. Stat. § 14-415.10, et seq. One of these criteria is that the applicant must be a U.S. citizen. N.C. Gen. Stat. § 14-415.15(a) (listing "citizenship" as the first of various "criteria"). If the applicant is not a U.S. citizen, then State law *requires* the sheriff to deny the permit. *See* N.C. Gen. Stat. § 14-415.15(c) (requiring that the "application for a permit *shall* be denied [by the sheriff] if the applicant fails to qualify under the criteria listed in this Article").

Just as Sheriff Wilkins has no choice in the matter, Plaintiffs' failure to sue the proper party results in a similar dilemma: Sheriff Wilkins has no option for resolving this case through settlement. Sheriff Wilkins cannot issue concealed carry permits to non-U.S. citizens without violating State law, and even then, a stipulation to do so would be of questionable validity given that it is directly contrary to the express law and clear public policy of North Carolina. *See RL REGI N.C., LLC v. Lighthouse Cove, LLC*, No. 427PA13, 2014 N.C. LEXIS 587, 7-8 (N.C. Aug. 20, 2014) (stating the well-settled rule that "[a] contract which on its face involves illegal conduct will not be enforced"); *Cansler v. Penland*, 125 N.C. 578, 579, 34 S.E. 683, 684 (1899) (holding that a contract in which a sheriff authorized another to exercise certain duties of the sheriff was inherently illegal and unenforceable); *see also* N.C. Gen. Stat. § 14-415.15(c) (requiring that the "application for a permit *shall* be denied [by the sheriff] if the applicant fails to qualify under the criteria listed in this Article"). In addition, a decision by one County in North Carolina to stop enforcing State law that is enforced in the other 99 Counties would violate N.C. Gen. Stat. § 14-415.23 ("Statewide uniformity"), which prohibits any local "rules . . .

concerning legally carrying a concealed handgun." *Id.* (providing that "[i]t is the intent of the General Assembly to prescribe a uniform system for the regulation of legally carrying a concealed handgun"). As described above, Section 1983 does not allow plaintiffs to extort local governments by putting them "at war with state government" in this manner. *Leean*, 154 F.3d at 718.

Moreover, settling this case with the Plaintiffs would render them "prevailing parties" under Section 1988. This would lead to a fundamentally unfair result in which the citizens of Granville County would be forced to pay Plaintiffs' attorneys' fees out of the County's general fund simply because their Sheriff complied with laws that the North Carolina General Assembly mandated him to follow. No decision of the U.S. Supreme Court or Fourth Circuit provides for local governments to be punished in this manner for properly respecting their subordinate status.

In sum, Sheriff Wilkins' mandatory compliance with State law does not give rise to Section 1983 liability under well-settled law. Plaintiffs may sue the State or its appropriate official, but they may not sue the local sheriff under Section 1983 for merely enforcing State law. The Complaint should be dismissed in its entirety on these grounds alone.

## II. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO JOIN THE STATE AS A NECESSARY PARTY.

Rule 19 of the Federal Rules of Civil Procedure provides:

(a) Persons Required to Be Joined if Feasible

(1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if . . . that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest.

Fed. R. Civ. P. 19(a)(1)(B)(i).

Here, for the same reasons described above as to why the statute being challenged is the law and policy of the State and not of Sheriff Wilkins and Granville County, the State is a necessary party to the instant lawsuit. It is axiomatic that the State has an interest in attempting to preserve the constitutionality of a comprehensive state regulatory scheme enacted by its General Assembly and, likewise, that disposing of this action in the State's absence may impair the State's ability to protect that interest. However, "the Eleventh Amendment bars the State's joinder. This is so even if the State is a necessary party under Rule 19." *Stone v. Pepmeyer*, 2011 U.S. Dist. LEXIS 45746, at *6 (C.D. Ill. Apr. 28, 2011). Thus, when the State is a necessary party, "there [are] only two options since the State cannot be joined: (1) carry on without the State; or (2) dismiss the action entirely." *Id.* at *6-7. In determining which option is appropriate, the Court must consider the criteria set forth in Rule 19(b).

> Rule 19(b) provides:
>
> If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
>
> (1)   the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2)   the extent to which any prejudice could be lessened or avoided by:
>
>> (A)   protective provisions in the judgment;
>>
>> (B)   shaping the relief; or
>>
>> (C)   other measures;
>
> (3)   whether a judgment rendered in the person's absence would be adequate; and
>
> (4)   whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

Each of these criteria weigh heavily in favor of dismissing the action to allow Plaintiffs to re-file this lawsuit against the appropriate State official of their choosing under *Ex Parte Young*. *See id.*, 209 U.S. 123 (allowing a plaintiff to ostensibly sue the State in federal court without Eleventh Amendment concerns by bringing an action for prospective injunctive relief against an appropriate State official). First, a judgment in Plaintiffs' favor would strike down the State's regulatory scheme for concealed carry permits without an opportunity for the State to defend the constitutionality of its own laws. Second, this prejudice cannot be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures because the State has expressly stated its intent to maintain statewide uniformity in the application of the laws at issue. *See* N.C. Gen. Stat. § 14-415.23 ("Statewide uniformity") (providing that "[i]t is the intent of the General Assembly to prescribe a uniform system for the regulation of legally carrying a concealed handgun"). Finally, and most importantly, Plaintiffs would have an adequate remedy if the action were dismissed for non-joinder because they would be afforded an opportunity to do what every other civil rights plaintiff does when challenging the constitutionality of a State law: sue the State through its appropriate official under *Ex Parte Young*, seek a declaration that the State law is unconstitutional, and seek injunctive relief to enjoin its enforcement. This is not only an adequate remedy, it is the only appropriate remedy.

For these reasons, and to the extent the Court reaches this issue, this action should be dismissed for failure to join the State as a necessary party.

### III. PLAINTIFFS HAVE FAILED TO COMPLY WITH THE STATUTORY NOTICE REQUIREMENTS FOR CHALLENGING THE CONSTITUTIONALITY OF A STATE STATUTE.

Consistent with their failure to bring this action against an appropriate State official, Plaintiffs have failed to comply with the basic notice requirements for challenging the constitutionality of a State statute. Rule 5.1 of the Federal Rules of Civil Procedure provides:

> A party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute must promptly . . . file a notice of constitutional question stating the question and identifying the paper that raises it, if . . . a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity; and . . . serve the notice and paper on . . . the state attorney general if a state statute is questioned – either by certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose.

Fed. R. Civ. P. 5.1.

The Rule provides that after the Notice is filed, the district court "must under 28 U.S.C. § 2403, certify to the appropriate attorney general that a statute has been questioned." *Id.*

In turn, 28 U.S.C. 2403 provides:

> In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The State shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality.

*Id.* at (b).

Together, these provisions require Plaintiffs to file a Notice of Constitutional Question with the North Carolina Attorney General giving notice that the constitutionality of a State statute is questioned under circumstances in which neither the State nor one of its officers in an

official capacity was named in the action. The Plaintiffs failed to do so when they filed the Complaint. They have failed to do so in the three months since the Complaint was filed.

Accordingly, to the extent the Court reaches this issue, the Complaint should be dismissed without prejudice to afford Plaintiffs an opportunity to properly file and serve the requisite Notice of Constitutional Question with the North Carolina Attorney General along with their Complaint.

IV. **EVEN IF SHERIFF WILKINS WERE THE ONLY PROPER DEFENDANT IN THIS ACTION, COUNT 2 OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE THERE IS NO SECOND AMENDMENT RIGHT TO CARRY A CONCEALED WEAPON.**

For the reasons set forth above, the Court need not reach this constitutional issue. Should it do so, however, Plaintiffs' Second Amendment challenge (Count 2) should be dismissed.

The Fourth Circuit has "refrain[ed] from any assessment of this constitutional issue, but has noted other decisions holding that "[t]he carrying of concealed firearms is not protected by the Second Amendment." *Woollard v. Gallagher*, 712 F.3d 865, 875 (4th Cir. 2013) (quoting *Peterson v. Martinez*, 707 F.3d 1197, 1201 (10th Cir. 2013)); *District of Columbia v. Heller*, 554 U.S. 570, 584 (2008) (recognizing that the second Amendment does not confer a "right to keep a weapon whatsoever in any manner whatsoever and for whatever purpose" and acknowledging that courts had previously "held that prohibitions on carrying concealed weapons were lawful under the Second Amendment and state analogues"). The North Carolina Court of Appeals has also examined this precise issue and held that N.C. Gen. Stat. § 14-415.12 does not violate the Second Amendment because it does not impose "a burden on conduct falling within the scope of the Second Amendment's guarantee." *Kelly v. Riley*, 733 S.E.2d 194, 199 (N.C. Ct. App. 2012) (citing *Robertson v. Baldwin*, 165 U.S. 275, 281-82 (1897)) (noting that "the Supreme Court has recognized that the Second Amendment right to keep and bear arms is not infringed by

prohibitions against carrying concealed weapons"). Accordingly, N.C. Gen. Stat. § 14-415.12 does not implicate Second Amendment rights as a matter of law.

For this additional reason, Plaintiffs' Second Amendment challenge (Count 2) should be dismissed.

## CONCLUSION

For the foregoing reasons, Sheriff Wilkins respectfully requests that the Court dismiss the Complaint.

Respectfully submitted the 24th day of September, 2014.

| **HOPPER HICKS & WRENN, PLLC** | **POYNER SPRUILL LLP** |
|---|---|
| By: s/ James C. Wrenn, Jr.<br>James C. Wrenn, Jr.<br>Granville County Attorney<br>N.C. State Bar No. 29528<br>jcw@hopperhickswrenn.com<br>111 Gilliam Street<br>Oxford, NC 27565<br>Telephone: 919.693.8161<br>Facsimile: 919.693.9938<br><br>COUNSEL FOR DEFENDANT | By: s/ Andrew H. Erteschik<br>Andrew H. Erteschik<br>N.C. State Bar No. 35269<br>aerteschik@poyners.com<br>P.O. Box 1801<br>Raleigh, NC 27602-1801<br>Telephone: 919.783.2895<br>Facsimile: 919.783.1075<br><br>ATTORNEYS FOR DEFENDANTS |

# CERTIFICATE OF SERVICE

      I hereby certify that I have this day electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel and parties of record as follows:

      David G. Sigale
      Law Firm of David G. Sigale, P.C.
      739 Roosevelt Road, Suite 304
      Glen Ellyn, IL 60137
      dsigale@sigalelaw.com

      Camden R. Webb
      Williams Mullen
      301 Fayetteville Street, Suite 1700
      Raleigh, NC 27601
      crwebb@williamsmullen.com

This the 24th day of September, 2014.

      s/Andrew H. Erteschik
      Andrew H. Erteschik