# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

| | | |
|---|---|---|
| FELICITY M. VEASEY and | ) | |
| SECOND AMENDMENT FOUNDATION, | ) | |
| INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 5:14-CV-369-BO |
| | ) | |
| BRINDELL B. WILKINS, JR., in his official | ) | |
| Capacity as Sheriff of Granville County, | ) | |
| North Carolina, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

NOW COME the Plaintiffs, FELICITY M. VEASEY and SECOND AMENDMENT FOUNDATION, INC., by and through undersigned counsel, and submit their Memorandum of Points and Authorities in Support of their Motion for Preliminary Injunction.

Dated: November 5, 2014                    Respectfully submitted,

                                           By: _____/s/ David G. Sigale_____
                                                David G. Sigale

                                           One of the Attorneys for Plaintiffs

Lead Counsel_____          Local Civil Rule 83.1 Counsel_____
David G. Sigale, Esq. (#6238103 (IL))     Camden R. Webb, Esq. (#22374 (NC))
LAW FIRM OF DAVID G. SIGALE, P.C.         WILLIAMS MULLEN
799 Roosevelt Road, Suite 207            301 Fayetteville Street, Suite 1700
Glen Ellyn, IL 60137                     Raleigh, NC 27601
Tel:  630.452.4547                       Tel. (919) 981-4000
Fax:  630.596.4445                       Fax. (919) 981-4300
dsigale@sigalelaw.com                    crwebb@williamsmullen.com
Admitted *pro hac vice*

Attorneys for Plaintiffs

## TABLE OF CONTENTS

Table of Authorities ………………………………………………….………... ii

Preliminary Statement ................................................................................. 1

Statement of Facts ....................................................................................... 2

    A.    North Carolina's Statute Bars Legal Aliens from Concealable
           Firearm Registration ............................................................... 2

    B.    The Registration Prohibition's Impact on Veasey and Similarly-
           Situated North Carolina Residents ......................................... 3

Summary of Argument ................................................................................ 6

Argument ..................................................................................................... 6

    I.    THE SECOND AMENDMENT APPLIES TO PLAINTIFF VEASEY
         AND THE ORGANIZATIONAL PLAINTIFFS' LEGAL ALIEN
         MEMBERS ……………………………………………………… 7

    II.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE
         ABSENCE OF PRELIMINARY INJUNCTIVE RELIEF................... 14

    III.    TRADITIONAL LEGAL REMEDIES ARE INADEQUATE TO
         RELIEVE THE HARM  OF THE BAN ON CONCEALABLE
         FIREARM REGISTRATION BY LEGAL ALIENS ............................ 16

    IV.    PLAINTIFFS WILL PREVAIL ON THE MERITS, AS
         NORTH CAROLINA'S BAN ON CONCEALABLE FIREARM
         ENDORSEMENTS VIOLATES THEIR SECOND AND
         FOURTEENTH AMENDMENT RIGHTS ........................................... 17

    V.    THE BALANCE OF INTERESTS FAVOR IMMEDIATE
         INJUNCTIVE RELIEF........................................................................ 20

Conclusion .................................................................................................. 21

Case 5:14-cv-00369-BO   Document 21   Filed 11/05/14   Page 2 of 28

## TABLE OF AUTHORITIES

Cases

Bateman v. Perdue,
    881 F.Supp.2d 709 (E.D.NC, 2012) ....................................................... 13

Bridges v. Wixon,
    326 U.S. 135 (1945) ................................................................................ 9

Centro Tepeyac v. Montgomery County,
    722 F.3d 184 (4th Cir. 2013) ............................................................... 14

City of Cleburne v. Cleburne Living Center,
    473 U.S. 432 (1985) .............................................................................. 15

District of Columbia v. Heller,
    128 S. Ct. 2783 (2008)............................................................... passim

Elrod v. Burns,
    427 U.S. 347 (1976) .............................................................................. 14

Ezell v. City of Chicago,
    651 F.3d 684 (7th Cir., 2011) ..............................................12, 14, 15, 16

Fletcher v. Haas,
    851 F.Supp.2d 287 (D.Mass, 2012) ...................................... 10, 11, 19

Fotoudis v. City and County of Honolulu,
    2014 U.S.Dist. LEXIS 130525 (D.HI, September 17, 2014) ...................... 18

Graham v. Richardson,
    403 U.S. 365 (1971) ............................................................................ 8, 9

Jackson v. Eden,
    1:12-CV-421 (D.NM 2014) .................................................................. 19

Kikumura v. Hurley,
    242 F.3d 950 (10th Cir. 2001) ..............................................................15

Kwong Hai Chew v. Colding,
    344 U.S. 590 (1953) ................................................................................ 9

League of Women Voters of N.C. v. North Carolina,
    2014 U.S.App. LEXIS 18764 (4th Cir. 2014) ........................................... 17

Case 5:14-cv-00369-BO   Document 21   Filed 11/05/14   Page 3 of 28

*Legend Night Club v. Miller,*
    637 F.3d 291 (4th Cir. 2011) ........................................................ 14, 16

*Lux v. Judd,*
    842 F.Supp.2d 895 (E.D.Va 2012) .......................................................... 16

*McDonald v. City of Chicago,*
    130 S. Ct. 3020 (2010) ...................................................... 13, 14, 17

*Moore v. Madigan,*
    702 F.3d 933 (7th Cir. 2012) ............................................................... 12

*Nino de Rivera Lajous v. Sankey,*
    4:13-CV-3070 (D.Neb. 2013) ............................................................ 18

*Pashby v. Delia,*
    709 F.3d 307 (4th Cir. 2013) ......................................................... 7, 17

*People v. Bounsari,*
    915 N.Y.S.2d 921 (N.Y. City Ct. 2011) ................................................ 10

*People v. Rappard,*
    28 Cal.Ct.App. 302 (Cal.Ct.App. 1972) .................................................. 19

*Pot v. Witt,*
    3:13-CV-3102 (W.D.Ark., May 8, 2014) .................................................. 18

*Real Truth About Obama, Inc. v. FEC,*
    575 F.3d 342 (4th Cir. 2009) ............................................................. 17

*Richmond Newspapers v. Virginia,*
    448 U.S. 555 (1980) ..................................................................... 17

*Rum Creek Coal Sales, Inc. v. Caperton,*
    926 F.2d 353 (4th Cir. 1991) ............................................................. 16

*Russian Volunteer Fleet v. United States,*
    282 U.S. 481 (1931) .................................................................... 9

*Smith v. State of South Dakota,*
    781 F.Supp.2d 879 (D.SD, 2011) ....................................................... 19

*State v. Kerner,*
    181 N.C. 574 (1921) .................................................................... 8

iv

*State of Washington v. Ibrahim,*
  164 Wn.App. 503 (Wash. App. Div. 3, 2011) ............................................ 11

*Takahashi v. Fish & Game Commission,*
  334 U.S. 410 (1948) ............................................................................ 9

*United States v. Boffil-Rivera,*
  2008 U.S. Dist. LEXIS 84633 (S.D. Fla. Aug. 12, 2008) ................................ 10

*United States v. Carolene Products Co.,*
  304 U.S. 144 (1938) ............................................................................ 9

*United States v. Flores-Higuera,*
  2011 U.S. Dist. LEXIS 84934 (N.D.Ga. July 6, 2011) ................................ 10

*United States v. Huitron-Guizar,*
  678 F.3d 1164 (10th Cir. 2012) ............................................................ 10

*United States v. South Carolina,*
  720 F.3d 518 (4th Cir. 2013) ................................................................ 7

*United States v. Verdugo-Urquidez,*
  494 U.S. 259 (1990) ........................................................................8, 11

*United States ex rel. Turner v. Williams,*
  194 U.S. 279 (1904) ............................................................................ 8

*Wetzel v. Edwards,*
  635 F.2d 283 (4th Cir. 1980) ................................................................ 7

*Winter v. NRDC, Inc.,*
  555 U.S. 7 (2008) .......................................................................... 7, 17

*Wong Wing v. United States,*
  163 U.S. 228 (1896) ............................................................................ 9

*Yick Wo v. Hopkins,*
  118 U.S. 356 (1886) ............................................................................ 8

*Zadvydas v. Davis,*
  553 U.S. 678 (2001) ............................................................................ 9

Constitutional Provisions

U.S. Const. amend. II ..................................................................................... *passim*

U.S. Const. amend. XIV.................................................................................. *passim*

N.C. Const. art. I, § 30 .................................................................................. 8

Statutes, Rules, and Ordinances

North Carolina General Statute N.C.G.S. § 14-415.12(a)(1) ...................... *passim*

North Carolina General Statute N.C.G.S. § 14-269(a1) ..................................... 2

North Carolina General Statute N.C.G.S. § 14-269(c) .......................…..…........... 2

North Carolina General Statute N.C.G.S. § 15A-1340.23(c) ............................... 3

North Carolina General Statute N.C.G.S. § 15A-1340.17(c),(d) .......................... 3

North Carolina General Statute N.C.G.S. § 15A-1340.14(b)(5) ........................... 3

Other Authorities

11A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 2948.1
   (2d ed. 1995) ............................................................................................. 16

T. Alexander Aleinikoff, *Semblances of Sovereignty: The Constitution, the State,
   and American Citizenship* 173 (2002) ................................................. 11

Gerald M. Rosberg, *The Protection of Aliens from Discriminatory Treatment by the
   National Government*, 1977 Sup. Ct. Rev. 275, 337 (1978) ........................11

Case 5:14-cv-00369-BO   Document 21   Filed 11/05/14   Page 6 of 28

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## *PRELIMINARY STATEMENT*

North Carolina General Statute ("N.C.G.S.") § 14-415.12(a)(1), which denies otherwise-qualified lawful resident aliens the ability to obtain an permit to bear concealable firearms for public carrying, flatly violates the Plaintiffs' Second Amendment rights to keep and bear arms. Also, because otherwise-qualified United States citizens are not restricted from obtaining a concealed carry permit in North Carolina, Plaintiffs' right to equal protection of the law under the Fourteenth Amendment is being violated. The deprivations of constitutional rights subject Plaintiffs to irreparable harm, and is such a clear-cut unconstitutionally-inflicted harm that Plaintiffs are clearly likely to succeed on the merits by the conclusion of this litigation.

The State's law, if not preliminarily enjoined, also poses an immediate threat to public safety, as an entire class of North Carolina residents has been and continues to be wrongfully denied the right and ability the full ability to defend their persons from criminal attack. North Carolina has no valid interest in completely banning legal aliens from registering concealable firearms for public carrying when citizens are not so banned. Therefore, the balance of interests falls heavily on Plaintiffs' side, and preliminary injunctive relief is warranted and appropriate.

## STATEMENT OF FACTS

A.  *North Carolina's Statute Bars Legal Aliens from Concealable Firearm Registration.*

The State of North Carolina requires that its residents who wish to obtain a permit to carry a concealed handgun ("CCP") must apply to the Sheriff of the County in which he or she resides.  In Veasey's case this is the Defendant Wilkins.

N.C.G.S. § 14-415.12 provides in pertinent part:

> (a)  The sheriff shall issue a permit to an applicant if the applicant qualifies under the following criteria:
>
> (1)  The applicant is a citizen of the United States and has been a resident of the State 30 days or longer immediately preceding the filing of the application. (Emphasis added.)

N.C.G.S. § 14-415.12(a)(1).

N.C.G.S. § 14-269(a1), in relevant part, prohibits one from willfully and intentionally carrying concealed about his/her person a concealed pistol or gun unless the person is on his/her own premises, the person is carrying a concealed handgun while possessing a concealed handgun permit and carrying said handgun within the scope of the permit.

N.C.G.S. § 14-269(c) states, in relevant part, "[a]ny person violating the provisions of subsection (a1) of this section shall be guilty of a Class 2 misdemeanor for the first offense. A second or subsequent offense is punishable as a Class I felony."

2

N.C.G.S. § 15A-1340.23(c) provides that a Class 2 misdemeanor with no prior convictions may receive a sentence of 1-30 days, with a community punishment authorized and a maximum $1000.00 fine.

N.C.G.S. § 15A-1340.17(c) and (d) provides that a Class I felony with one Class Al misdemeanor conviction (See N.C.G.S. § 15A-1340.14(b)(5)) may receive a presumptive sentence of 4-17 months, with a community punishment authorized and a fine subject to the court's discretion.

These Code sections prohibit Veasey and all other legal aliens residing in North Carolina from obtaining a concealed carry permit, and therefore from the public concealed carry of firearms for self-defense.

It is unclear what North Carolina's claimed purpose was for enacting this prohibition, which serves solely to discriminate against North Carolina's qualified legal alien population, including Veasey and members of SAF, though there is no purpose North Carolina can offer that passes constitutional muster.

B.    *The Registration Prohibition's Impact on Veasey and Similarly-Situated North Carolina Residents.*

Plaintiff Veasey is 38 years old, and a citizen of Australia residing with her family in Butner, North Carolina, and who has done so since 2004. She also lived in neighboring Durham County, North Carolina from 2001-2004. Veasey received her permanent resident visa (a/k/a "green card") in 2001. Prior to that Veasey was on a work visa, which she had while she worked at the Australian Embassy in Washington, D.C. Prior to that, she briefly was in the United States on a tourist visa. Felicity has been employed in IT and telecommunications for the same

3

company in North Carolina since 2001. In sum, she has many solid connections to the State of North Carolina and the Butner area, including her husband and stepson who reside with her in the area (*See* ¶1 of Declaration of Felicity M. Todd Veasey, attached hereto).

Veasey is allowed to possess a handgun in North Carolina only in her house or on her property, but is prohibited by N.C.G.S. § 14-415.12(a)(1) from obtaining a concealed carry permit, and thus generally carrying a handgun in a concealed manner for self-defense (See ¶2 of Veasey Declaration).

Veasey would carry a loaded and functional concealed handgun in public for self-defense, but she refrains from doing so because she fears arrest, prosecution, fine, and imprisonment as she understands it is unlawful for a non-citizen to carry a concealed handgun in North Carolina (*See* ¶5 of Veasey Declaration).

In October, 2012, Veasey was notified by the Granville County Sheriff's Office that she was ineligible for a concealed carry permit because she is not a citizen. She was told not to bother applying because her application would be denied on the basis of citizenship and the money for the application fee would be wasted. Therefore, Felicity's attempt to apply for a concealed carry permit was denied. (*See* ¶3 of Veasey Declaration).

Defendant Wilkins is the Sheriff of Granville County, North Carolina. In Wilkins's official capacity, he is responsible for enforcing certain of North Carolina's laws, customs, practices, and policies, specifically including N.C.G.S. § 14-415.12(a)(1). In that capacity, Wilkins is presently enforcing the laws, customs,

4

practices and policies complained of in this action. Specifically, Wilkins is the authority charged with processing and issuing concealed carry permit applications in Granville County, North Carolina. He is sued in his official capacity (Defendant's Answer to Complaint (Doc. 13) at ¶15).

SAF is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF's membership includes lawfully admitted aliens residing in North Carolina. SAF has over 650,000 members and supporters nationwide, including many in the State of North Carolina. Veasey is a member of SAF. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right privately to own and possess firearms. SAF litigates this action on behalf of itself and its members, and as such has organizational standing to pursue this action and Motion (*See* ¶2 of Declaration of Julianne H. Versnel, Director of Operations of SAF, attached hereto).

Veasey is a member of SAF (*See* ¶6 of Veasey Declaration).

Every day that passes without relief from North Carolina's registration prohibition, all legal aliens residing in North Carolina who are otherwise qualified to obtain a concealed carry permit, including Veasey and the members and supporters of Plaintiff SAF, are frustrated in their ability to carry handguns in a concealed manner for self-defense, and to enjoy their constitutional rights.

But for the criminal enactments challenged in this complaint, and Defendant's enforcement of same, Veasey and the qualified legal alien members of

5

SAF would obtain permits and carry concealable firearms for self-defense, but refrain from doing so for fear of arrest, prosecution, fine and incarceration (*See* ¶5 of Veasey Declaration; ¶4 of Versnel Declaration).

## SUMMARY OF ARGUMENT

North Carolina's prohibition on legal aliens obtaining a concealed carry permit for self-defense, regardless of said legal alien's qualifications to do so, unquestionably violates the constitutional guarantees of keeping arms and equal protection under the laws, as do any other of North Carolina's various statutes that, regardless of their facial validity, undeniably frustrate constitutionally-secured equal rights of concealed handgun possession.

Considering the certainty of success on the merits, Plaintiffs are entitled to preliminary injunctive relief. Plaintiffs are suffering, and will continue to suffer, irreparable harm in the absence of injunctive relief, for which there is no adequate remedy at law. Granting Plaintiffs relief cannot injure Defendant. And given the degree to which North Carolina's concealed carry permit prohibition threatens the safety of Plaintiffs, the public interest - already favoring the exercise of fundamental rights - is clearly satisfied by immediately enjoining North Carolina's unconstitutional practices.

## ARGUMENT

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence

of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

Similarly, the Fourth Circuit acknowledged and evaluated these same four elements in *Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013). Although other Fourth Circuit cases seem to have raised Plaintiffs' burden by requiring a "clear" showing of the first two elements (*See*, *e.g.*, *United States v. South Carolina*, 720 F.3d 518, 533 (4th Cir. 2013)), Plaintiffs' burden should be analyzed in accordance with *Winter*.

There are also some older cases which have held that because Plaintiffs are seeking a mandatory, rather than prohibitive, preliminary injunction, that the preliminary injunction should only be granted "only in those circumstances when the exigencies of the situation demand such relief." *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980). The denial of constitutional rights, and the threat to the Plaintiffs' safety, is such a circumstance.

Plaintiffs easily satisfy all these threshold requirements for obtaining preliminary injunctive relief, even under a heightened standard, and the balance of interests weigh heavily in their favor.

I.   THE SECOND AMENDMENT APPLIES TO PLAINTIFF VEASEY AND
     SAF'S LEGAL ALIEN MEMBERS

The question of whether Veasey, a lawful alien residing in North Carolina, and SAF's similarly-situated members enjoy Second and Fourteenth Amendment rights is an easy one – the Supreme Court has ruled that they do. ". . . '[T]he people' protected by the . . . Second [Amendment] . . . refers to a class of persons who are

7

part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990). That includes those who are legally in the country. *See United States ex rel. Turner v. Williams*, 194 U.S. 279, 292 (1904). Of course, North Carolina acknowledges this to some extent; legal aliens are allowed firearm possession on their premises, and are even allowed to carry firearms openly. *See* N.C. Const. art. I, § 30; *State v. Kerner*, 181 N.C. 574, 576 (1921) ("right to bear arms unconcealed cannot be infringed."). However, North Carolina has arbitrarily decided that said legal aliens shall not be permitted to obtain a concealed carry permit, which would enable Veasey and others similarly-situated to defend themselves in every other circumstance the same as citizens.

"The Fourteenth Amendment provides, 'Nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.' It has long been settled, and it is not disputed here, that the term 'person' in this context encompasses lawfully admitted resident aliens as well as citizens of the United States and entitles both citizens and aliens to the equal protection of the laws of the State in which they reside." *Graham v. Richardson*, 403 U.S. 365, 371 (1971) (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886)).

State action violates equal protection rights if it separates individuals into discrete classes based on citizenship and subjects those individuals to disparate treatment. *Graham*, 403 U.S. at 371, 377. A classification based on an individual's

8

status as an alien is "inherently suspect and subject to close judicial scrutiny." *Id.*
at 372. "Aliens as a class are a prime example of a 'discrete and insular' minority
(*see United States v. Carolene Products Co.*, 304 U.S. 144, 152-153, n. 4 (1938)) for
whom such heightened judicial solicitude is appropriate." *Graham*, 403 U.S. at 372.
"The Fourteenth Amendment and the laws adopted under its authority thus
embody a general policy that all persons lawfully in this country shall abide 'in any
state' on an equality of legal privileges with all citizens under non-discriminatory
laws." *Id.* at 374 (quoting *Takahashi v. Fish & Game Commission*, 334 U.S. 410,
420 (1948)).

Further, legal aliens in the United States have been extended the same
Constitutional rights as citizens in a variety of other situations for more than one
hundred years. *See*, *e.g.*, *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596 (1953)
(resident alien is a "person" within the meaning of the Fifth Amendment); *Bridges
v. Wixon*, 326 U.S. 135, 148 (1945) (resident aliens have First Amendment rights);
*Russian Volunteer Fleet v. United States*, 282 U.S. 481 (1931) (Just Compensation
Clause of Fifth Amendment); *Wong Wing v. United States*, 163 U.S. 228, 238 (1896)
(resident aliens entitled to Fifth and Sixth Amendment rights). Even illegal aliens
then-presently in the Country receive protection under the Fourteenth
Amendment's Due Process Clause. (*See*, *e.g.*, *Zadvydas v. Davis*, 553 U.S. 678, 693
(2001)).

The Tenth Circuit addressed the issue of the constitutionality of 18 U.S.C. §
922(g)(5) as applied to an illegal alien, an issue not confronted here. *United States*

9

*v. Huitron-Guizar*, 678 F.3d 1164 (10th Cir. 2012). However, in discussing the post-

*Heller* litigation, the Court noted as to lawful permanent residents like Veasey:

> The thrust of *Heller*, or at least the intended thrust of much post-*Heller* litigation, has been to broaden the right. Recently some state statutes that burden gun possession by lawful permanent aliens (which § 922(g)(5) does not cover) have been declared invalid under the Equal Protection Clause, which requires that strict scrutiny be applied to state laws that impose restrictions based on alienage. *See, e.g.*, *People v. Bounsari*, 31 Misc. 3d 304, 915 N.Y.S.2d 921, 924 (N.Y. City Ct. 2011) (invalidating New York statute dating from 1905, prohibiting non-citizens from possessing a dangerous weapon, and noting related decisions in Michigan, Nevada, California); *Fletcher v. Haas*, [851 F. Supp. 2d 287, 301] (D.Mass. Mar. 30, 2012) (holding that Massachusetts's firearm regime contravenes the Second Amendment as applied to lawful permanent residents).

*Huitron-Guizar*, 678 F.3d at 1170. Other Courts have also ruled along a line

dividing the lawful permanent resident from the illegal alien, where the lawful

resident possesses Second Amendment rights and the illegal alien does not. *See*,

*e.g.*, *United States v. Boffil-Rivera*, 2008 U.S. Dist. LEXIS 84633 at *32 (S.D. Fla.

Aug. 12, 2008) ("Congress has made a policy judgment, as it has in numerous other

statutes, that *unlike citizens and legal residents*, illegal aliens by their very

unauthorized nature and lack of allegiance to the government of the United States

pose a greater risk to abuse firearms.") (Emphasis added.); *See also United States v.*

*Flores-Higuera,* 2011 U.S. Dist. LEXIS 84934 at *5 (N.D. Ga. July 6, 2011)

("Because Defendant is not a citizen, or at the least, a lawful resident with ties to

the community, the Court concludes that he is not a member of the "political

community" whose rights are protected by the Second Amendment.)"

10

The Court concluded in *Fletcher v. Haas*, 851 F. Supp. 2d 287 (D.Mass., 2012):

> With this framework in mind, I find no justification for refusing to extend the Second Amendment to lawful permanent residents. They have necessarily "developed sufficient connection with this country to be considered part of [the] community." *Verdugo-Urquidez*, 494 U.S. at 265. Professor Rosberg has identified as "the traditional premise of the country's immigration policy—that resident aliens are virtually full-fledged members of the American community, sharing the burdens of membership as well as the benefits." Gerald M. Rosberg, *The Protection of Aliens from Discriminatory Treatment by the National Government*, 1977 Sup. Ct. Rev. 275, 337 (1978). And then-Professor Aleinikoff, a former General Counsel of the Immigration and Nationalization Service, observed a decade ago,
>
> "Permanently residing aliens live and function much like citizens. They hold jobs, attend churches, send their children to school, and pay taxes. Children they give birth to in the United States are American citizens. From this perspective, the fact that aliens are not required by law to apply for citizenship is not surprising; in day-to-day terms, permanently residing aliens and citizens are already largely indistinguishable."

*Fletcher*, 851 F. Supp. 2d at 301 (quoting T. Alexander Aleinikoff, *Semblances of Sovereignty: The Constitution, the State, and American Citizenship* 173 (2002)).

Thus, the Court in *Fletcher* determined that the plaintiffs in that case, two lawful permanent resident aliens, were entitled to Second Amendment rights. *Fletcher*, 851 F. Supp. 2d at 301-02. *See also State of Washington v. Ibrahim*, 164 Wn. App. 503, 514 (Wash. App. Div. 3, 2011) (legal alien's conviction for unlawful possession of firearm reversed when statute barring lawful aliens from possessing firearms

11

found to unconstitutionally deny defendant 14th Amendment right to equal protection of law).

The Seventh Circuit has compared the analysis of infringements of Second Amendment rights to those of infringements of First Amendment rights (*See Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) (ban on gun ranges within State limits ruled unconstitutional). According to *Ezell*, infringements on the core Second Amendment right of possession for self-defense must satisfy a level of scrutiny approaching strict scrutiny. *Id.* at 708. This means North Carolina's prohibition, ". . . a severe burden on the core Second Amendment right of armed self-defense will require an extremely strong public-interest justification and a close fit between the government's means and its end." *Id.* Though the Fourth Circuit has yet to consider the specific issue raised in this case, the *Ezell* decision is comprehensive, well-considered, and its holdings and reasoning should be followed by this Court. Doing so, it is evident North Carolina cannot defend its arbitrary ban. Further, under any level of scrutiny (rational basis not even being up for consideration under *District of Columbia v. Heller*, 128 S. Ct. 2783, 2818, fn 27 (2008)), North Carolina's statute fails.

Further, while North Carolina trusts lawful resident aliens to openly carry firearms subject to certain exceptions, it is not always desirable, feasible or available to do so. The Seventh Circuit, in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), held the ban of the public carrying of firearms violated the Second

Case 5:14-cv-00369-BO   Document 21   Filed 11/05/14   Page 18 of 28

Amendment and was unconstitutional, and noted the importance of the right to self-defense:

> Both *Heller* and *McDonald* do say that "the need for defense of self, family, and property is most acute" in the home, *id*. at 3036 (emphasis added); 554 U.S. at 628, but that doesn't mean it is not acute outside the home. *Heller* repeatedly invokes a broader Second Amendment right than the right to have a gun in one's home, as when it says that the amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." 554 U.S. at 592. Confrontations are not limited to the home.

*Id.* at 935-36.

This District had previously reached this legal conclusion in *Bateman v. Perdue*, 881 F.Supp.2d 709 (E.D.NC, 2012), where the portion of the North Carolina Riot Control Act of 1969 which prohibited residents from bearing arms for self-defense was an unconstitutional violation of Second Amendment rights. *Id.* at 716. The Court in *Bateman* applied strict scrutiny to the prohibition, as the plaintiffs were law-abiding residents of the State. *Id.* at 715. The law-abiding Plaintiffs in this case deserve the same consideration, especially since they are members of a suspect class being discriminated against solely for that reason.

Plaintiffs as legal aliens enjoy Second Amendment rights, which includes the right to carry firearms in public for self-defense. "Although considerable uncertainty exists regarding the scope of the Second Amendment right to keep and bear arms, it undoubtedly is not limited to the confines of the home." *Id.* at 714. If legal aliens (like everyone else) are considered trustworthy enough to carry openly, then it

13

serves no governmental purpose to deny them the right to concealed carry, in the manner exercised and enjoyed by citizens.

## II.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY INJUNCTIVE RELIEF.

Veasey, and other members and supporters of SAF, enjoy a fundamental right to keep and bear arms. *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3042 (2010) (majority op.) (Alito, J.). "[T]he inherent right of self-defense has been central to the Second Amendment right." *Heller*, 128 S. Ct. at 2817. The denial of constitutional rights, even if such deprivation were temporary, constitutes irreparable harm for purposes of granting injunctive relief (*See*, *e.g.*, *Centro Tepeyac v. Montgomery County*, 722 F.3d 184, 191 (4th Cir. 2013) (First Amendment freedom of speech) (citing *Elrod v. Burns*, 427 U.S. 347, 373, (1976)); *See also Legend Night Club v. Miller*, 637 F.3d 291, 302 (4th Cir. 2011) (unconstitutional ban on adult entertainment by establishments with liquor license a violation of First Amendment).

As noted above, in *Ezell* the Seventh Circuit favorably compared the fundamental freedoms of the Second Amendment to those fundamental freedoms of the First Amendment and deemed the deprivation of either to be irreparable harm. The *Ezell* Court held that "[t]he loss of a First Amendment right is frequently presumed to cause irreparable harm based on 'the intangible nature of the benefits flowing from the exercise of those rights; and the fear that, if those rights are not jealously safeguarded, persons will be deterred, even if imperceptibly, from exercising those rights in the future.' . . . The Second Amendment protects similarly

14

intangible and unquantifiable interests. *Heller* held that the Amendment's central component is the right to possess firearms for protection. (cite omitted). Infringements of this right cannot be compensated by damages." *See Ezell*, 651 F.3d at 699.

Put simply, if N.C.G.S. § 14-415.12(a)(1) is not enjoined, legal aliens including the Plaintiffs will continue to be unconstitutionally frustrated in their ability to exercise their fundamental Second Amendment rights.

Considering that the Second Amendment exists to secure the right of armed self-defense, the inability for legal aliens to defend themselves against violence in a manner allowed not only by the vast majority of the United States, but also allowed to North Carolina residents who are U.S. citizens, also causes a profound loss of a sense of one's security, to say nothing of the irreparable harm resulting from a successful criminal attack. Thus, the irreparable harm flowing from any delays in obtaining relief is palpable.

Additionally, the deprivation of the right of lawful resident aliens to be treated equally under the law, and instead being discriminated due to their alienage classification, in violation of the Equal Protection Clause of the Fourteenth Amendment, is an irreparable harm that continues so long as the offending statute is in place. Equal protection "is essentially a direction that all persons similarly situated shall be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). "When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Kikumura v.*

*Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) (citing 11A Charles Alan Wright *et al.*,

Federal Practice and Procedure § 2948.1 (2d ed. 1995)); *See also Rum Creek Coal*

*Sales, Inc. v. Caperton*, 926 F.2d 353, 362 (4th Cir. 1991); *Ezell*, 651 F.3d at 699.

Under both the Second and Fourteenth Amendments, Plaintiffs are currently

suffering the irreparable harm of the deprivation of their constitutional rights, and

will continue to suffer said irreparable harm every day N.C.G.S. § 14-415.12(a)(1) is

not enjoined.

III.    TRADITIONAL LEGAL REMEDIES ARE INADEQUATE TO RELIEVE
        THE HARM OF THE BAN ON REGISTRATION BY LEGAL ALIENS.

There is no way to quantify, in terms of money damages, the inability to

engage in protected Second Amendment activity such as the concealed carry of a

firearm such as a handgun for self-defense, or the discrimination of being classified

solely based on alienage in violation of Fourteenth Amendment Equal Protection

rights.  The infringement of constitutional rights is frequently considered to be

beyond quantification with money damages.  This includes infringements of Second

Amendment rights.  *See Ezell*, 651 F.3d at 699; *See also*, *e.g.*, *Legend Night Club*,

637 F.3d at 302; *Lux v. Judd*, 842 F.Supp.2d 895, 904 (E.D.Va 2012) (First

Amendment free association rights).

No legal remedies will be available to legal aliens whose concealed carry

permits will be refused because non-citizens are denied Second Amendment rights

or the equal protection of North Carolina's firearms laws.  And quite obviously, no

legal remedies will suffice to compensate those killed or injured for the inability to

lawfully possess concealed defensive arms, owing to North Carolina's ban.

16

IV.  PLAINTIFFS WILL PREVAIL ON THE MERITS, AS NORTH CAROLINA'S BAN ON CONCEALED CARRY PERMITS VIOLATES THEIR SECOND AND FOURTEENTH AMENDMENT RIGHTS.

*Possession of Handguns for Lawful Purposes Including Self-Defense Lies at the Core of the Second Amendment.*

"[P]laintiffs seeking preliminary injunctions must demonstrate that they are likely to succeed on the merits. *Winter*, 555 U.S. at 20.  Although this inquiry requires plaintiffs seeking injunctions to make a 'clear showing' that they are likely to succeed at trial, *Real Truth* [*About Obama, Inc. v. FEC*], 575 F.3d at 345 [(4th Cir. 2009)] plaintiffs need not show a certainty of success."  *Pashby*, 709 F.3d at 321; *See also League of Women Voters of N.C. v. North Carolina*, 2014 U.S.App. LEXIS 18764 at *51 (4th Cir. 2014).  In this case, Plaintiffs have made a clear showing they should win on the merits.

"[T]he Court has acknowledged that certain unarticulated rights are implicit in enumerated guarantees . . . fundamental rights, even though not expressly guaranteed, have been recognized by the Court as indispensable to the enjoyment of rights explicitly defined." *Richmond Newspapers v. Virginia*, 448 U.S. 555, 579-80 (1980).  Unsurprisingly, the Supreme Court has noted that the enumerated, articulate right to possess a firearm for lawful purposes, most notably for self-defense, are fundamentally core to the Second Amendment.  *McDonald*, 130 S.Ct. at 3043.

In *Heller*, neither the D.C. Circuit nor the Supreme Court bothered to engage in any balancing test or other extended analysis before striking down Washington, D.C.'s ban on the possession of functional firearms for self-defense, as that law

17

literally contradicted a "core" aspect of Second Amendment rights. *Heller*, 128 S.

Ct. at 2818. A complete ban on concealed possession of firearms for an entire class

of legal North Carolina residents, based on nothing more than citizenship status,

will meet the same fate.

There is much precedent as to this issue. The District of Hawaii recently

enjoined a ban on lawful resident aliens from obtaining a permit to purchase

firearms. *Fotoudis v. City and County of Honolulu*, 2014 U.S.Dist. LEXIS 130525

(D.HI, September 17, 2014). The Court held:

> The undisputed facts establish that Fotoudis, as a lawful permanent resident alien of the United States (and resident of Hawaii), was denied the opportunity to apply for a permit to acquire firearms solely because of his alienage. This classification violates the equal protection clause of the U.S. Constitution. HRS § 134-2(d) is thus unconstitutional as-applied to Fotoudis (and other lawful permanent resident aliens), and Defendants are therefore permanently enjoined from denying Fotoudis the opportunity (1) to apply for a permit to acquire firearms, and (2) to obtain such a permit, if he otherwise meets the qualifications of state law, as specifically set forth in the Conclusion of this Order.

*Id.* at *9.

As to the concealed carry ban at issue in this case, the District Court in the

Western District of Arkansas recently entered a permanent injunction against the

exact same restriction (*See* Order of Final Judgment in *Pot v. Witt*, 3:13-CV-3102

(W.D.Ark.) dated May 8, 2014, attached hereto).

Just previous to the judgment in *Pot*, in *Nino de Rivera Lajous v. Sankey*,

4:13-CV-3070 (D.Neb.), the District Court entered a permanent injunction against

18

an identically-discriminatory restriction (*See* Order of Final Judgment in 4:13-CV-3070 dated October 15, 2013, attached hereto).

Further, in *Jackson v. Eden* [prev. *Hubbard*], 1:12-CV-421 (D.NM), a New Mexico statutory restriction identical to that challenged here was permanently enjoined as a violation of Fourteenth Amendment equal protection grounds on March 31, 2014 (*See* Judgment in 1:12-CV-421, attached hereto).  In the Opinion accompanying the Judgment, the Court stated:

> There is no argument made, much less any evidence proferred, that permanent resident aliens who reside in this country legally pose a greater danger when carrying a concealed loaded firearm than do United States citizens. Indeed, '[a]ny classification which treats all aliens as dangerous and all United States citizens as trustworthy rests upon a very questionable basis.' *Id.* at Doc. 59, p.9 (quoting *People v. Rappard*, 28 Cal.Ct.App. 302, 305 (Cal.Ct.App. 1972); *Fletcher*, 851 F.Supp.2d at 303 ("Any classification based on the assumption that lawful permanent residents are categorically dangerous and all American citizens by contrast are trustworthy lacks even a reasonable basis.")).

The *Jackson* Court went on to hold:

> The Court concludes that the citizenship provision in [the New Mexico concealed carry statutes] violates the Equal Protection Clause of the United States Constitution as applied to permanent resident aliens, like Plaintiff Jackson, who are otherwise qualified to obtain a concealed carry license.  Accordingly, Plaintiffs have prevailed on the merits of their Equal Protection claim.

*Jackson*, 1:12-CV-421 at Doc.59, p.10).

Finally, Plaintiffs' position has been supported by case law since 2011, just months after the *McDonald v. City of Chicago* decision.  *See Smith v. State of South*

*Dakota*, 781 F.Supp.2d 879, 886 (D.SD, 2011) (prohibiting lawful resident aliens from obtaining concealed carry permits is not narrowly tailored and violates Equal Protection Clause under strict scrutiny analysis).

North Carolina's statute strongly fails all four preliminary injunction factors. As noted in the numerous other similar cases, it is not within the State's constitutional power to ban otherwise qualified legal alien residents from possessing concealed firearms, including handguns which have been expressly deemed constitutionally protected by the Supreme Court. *See Heller*, 128 S.Ct. at 2817-18 ("Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home 'the most preferred firearm in the nation to 'keep' and use for protection of one's home and family,' would fail constitutional muster"). That North Carolina has such a ban violates the Second and Fourteenth Amendments. The State has no interest, let alone an extremely strong one, in denying all legal aliens the fundamental Second and Fourteenth Amendment rights of handgun possession in the same manner available to citizens. In light of the above, a preliminary injunction against the enforcement of N.C.G.S. § 14-415.12(a)(1) should be immediately entered.

V.   THE BALANCE OF INTERESTS FAVOR IMMEDIATE INJUNCTIVE
     RELIEF.

The Plaintiffs are certain to prevail on the merits. Absent relief, they will continue to suffer irreparable injury in the loss of Second and Fourteenth Amendment rights, if not actual physical harm. The State has no legitimate interest in the prohibition; and the public interest strongly favors equal protection

20

of the law, and the respecting of fundamental rights, to say nothing of the ability of all qualified North Carolina residents to defend themselves equally. The balance of interests could not more completely tilt in favor of immediate injunctive relief.

## *CONCLUSION*

North Carolina cannot deny Second and Fourteenth Amendment rights to an entire class of its residents. Plaintiffs respectfully request that the motion for preliminary injunctive relief be granted.

Dated: November 5, 2014                                  Respectfully submitted,


                                                         By: _____ /s/ David G. Sigale_____
                                                                 David G. Sigale

                                                         One of the Attorneys for Plaintiff

Lead Counsel_____                             Local Civil Rule 83.1 Counsel_____
David G. Sigale, Esq. (#6238103 (IL))                    Camden R. Webb, Esq. (#22374 (NC))
LAW FIRM OF DAVID G. SIGALE, P.C.                        WILLIAMS MULLEN
799 Roosevelt Road, Suite 207                            301 Fayetteville Street, Suite 1700
Glen Ellyn, IL 60137                                     Raleigh, NC 27601
Tel: 630.452.4547                                        Tel. (919) 981-4000
Fax: 630.596.4445                                        Fax. (919) 981-4300
dsigale@sigalelaw.com                                    crwebb@williamsmullen.com
Admitted *pro hac vice*

Attorneys for Plaintiffs

## CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING

The undersigned certifies that:

     1.     On October 30, 2014, the foregoing document was electronically filed with the District Court Clerk *via* CM/ECF filing system;

     2.     Pursuant to F.R.Civ.P. 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.

                                    /s/ David G. Sigale
                              One of the Attorneys for Plaintiff