**SESSION LAW 2015-195**
**HOUSE BILL 562**

AN ACT TO AMEND VARIOUS FIREARM LAWS.

The General Assembly of North Carolina enacts:

**SECTION 1.(a)** G.S. 14-269(b) reads as rewritten:
"(b)   This prohibition shall not apply to the following persons:
…
(4a)   Any person who is a district attorney, an assistant district attorney, or an investigator employed by the office of a district attorney and who has a concealed handgun permit issued in accordance with Article 54B of this Chapter or considered valid under G.S. 14-415.24; provided that the person shall not carry a concealed weapon at any time while in a courtroom or while consuming alcohol or an unlawful controlled substance or while alcohol or an unlawful controlled substance remains in the person's body. The district attorney, assistant district attorney, or investigator shall secure the weapon in a locked compartment when the weapon is not on the person of the district attorney, assistant district attorney, or ~~investigator;~~investigator. Notwithstanding the provisions of this subsection, a district attorney may carry a concealed weapon while in a courtroom;
…
(7)   A person employed by the Department of Public Safety who has been designated in writing by the Secretary of the Department, who has a concealed handgun permit issued in accordance with Article 54B of this Chapter or considered valid under G.S. 14-415.24, and has in the person's possession written proof of the designation by the Secretary of the Department, provided that the person shall not carry a concealed weapon at any time while consuming alcohol or an unlawful controlled substance or while alcohol or an unlawful controlled substance remains in the person's body.
(8)   Any person who is an administrative law judge described in Article 60 of Chapter 7A of the General Statutes and who has a concealed handgun permit issued in accordance with Article 54B of this Chapter or considered valid under G.S. 14-415.24, provided that the person shall not carry a concealed weapon at any time while consuming alcohol or an unlawful controlled substance or while alcohol or an unlawful controlled substance remains in the person's body."

**SECTION 1.(b)** G.S. 14-269.4 reads as rewritten:
"**§ 14-269.4. Weapons on certain State property and in courthouses.**
It shall be unlawful for any person to possess, or carry, whether openly or concealed, any deadly weapon, not used solely for instructional or officially sanctioned ceremonial purposes in the State Capitol Building, the Executive Mansion, the Western Residence of the Governor, or on the grounds of any of these buildings, and in any building housing any court of the General Court of Justice. If a court is housed in a building containing nonpublic uses in addition to the court, then this prohibition shall apply only to that portion of the building used for court purposes while the building is being used for court purposes.
This section shall not apply to any of the following:
…

(7) Any person who carries or possesses an ordinary pocket knife, as defined in G.S. 14-269(d), carried in a closed position into the State Capitol Building or on the grounds of the State Capitol Building.

Any person violating the provisions of this section shall be guilty of a Class 1 misdemeanor."

**SECTION 1.(c)** G.S. 14-415.27 reads as rewritten:

"**§ 14-415.27. Expanded permit scope for certain persons.**

Notwithstanding G.S. 14-415.11(c), any of the following persons who has a concealed handgun permit issued pursuant to this Article or that is considered valid under G.S. 14-415.24 is not subject to the area prohibitions set out in G.S. 14-415.11(c) and may carry a concealed handgun in the areas listed in G.S. 14-415.11(c) unless otherwise prohibited by federal law:

(1) A district attorney.
(2) An assistant district attorney.
(3) An investigator employed by the office of a district attorney.
(4) A North Carolina district or superior court judge.
(5) A magistrate.
(6) A person who is elected and serving as a clerk of court.
(7) A person who is elected and serving as a register of deeds.
(8) A person employed by the Department of Public Safety who has been designated in writing by the Secretary of the Department and who has in the person's possession written proof of the designation.
(9) A North Carolina administrative law judge."

**SECTION 2.** G.S. 14-269.2(k) reads as rewritten:

"(k) The provisions of this section shall not apply to a person who has a concealed handgun permit that is valid under Article 54B of this Chapter, or who is exempt from obtaining a permit pursuant to that Article, ~~who~~ if any of the following conditions are met:

(1) The person has a handgun in a closed compartment or container within the person's locked vehicle or in a locked container securely affixed to the person's ~~vehicle. A person may unlock~~ vehicle and only unlocks the vehicle to enter or exit the vehicle ~~provided~~ while the firearm remains in the closed compartment at all times and immediately locks the vehicle ~~is locked immediately~~ following the entrance or exit.
(2) The person has a handgun concealed on the person and the person remains in the locked vehicle and only unlocks the vehicle to allow the entrance or exit of another person.
(3) The person is within a locked vehicle and removes the handgun from concealment only for the amount of time reasonably necessary to do either of the following:
    a. Move the handgun from concealment on the person to a closed compartment or container within the vehicle.
    b. Move the handgun from within a closed compartment or container within the vehicle to concealment on the person."

**SECTION 3.** G.S. 14-269.2 is amended by adding a new subsection to read:

"(l) It is an affirmative defense to a prosecution under subsection (b) or (f) of this section that the person was authorized to have a concealed handgun in a locked vehicle pursuant to subsection (k) of this section and removed the handgun from the vehicle only in response to a threatening situation in which deadly force was justified pursuant to G.S. 14-51.3."

**SECTION 4.(a)** Article 45 of Chapter 106 of the General Statutes is amended by adding a new section to read:

"**§ 106-503.2. Regulation of firearms at State Fair.**

(a) Except as otherwise provided in this section, the Commissioner of Agriculture is authorized to prohibit the carrying of firearms in any manner on the State Fairgrounds during the period of time each year that the State Fair is conducted.

(b) Notwithstanding subsection (a) of this section, any prohibition under this section shall not apply to the following persons:

(1) Any person exempted by G.S. 14-269(b)(1), (2), (3), (4), or (5).
(2) Any person who has a concealed handgun permit that is valid under Article 54B of this Chapter, or who is exempt from obtaining a permit pursuant to

that Article, who has a handgun in a closed compartment or container within the person's locked vehicle or in a locked container securely affixed to the person's vehicle. A person may unlock the vehicle to enter or exit the vehicle provided the firearm remains in the closed compartment at all times and the vehicle is locked immediately following the entrance or exit."

**SECTION 4.(b)** The Department of Agriculture, in consultation with the Department of Public Safety and the North Carolina Sheriffs' Association, shall study the best method to allow persons with concealed handgun permits to carry a concealed handgun on their person from a parking lot to the entrance of the State Fairgrounds, and a secure method of storage for and retrieval of those handguns at or near the entrance. The Department of Agriculture shall report to the Joint Legislative Oversight Committee on Justice and Public Safety by April 1, 2016, with recommendations, including any necessary legislation.

**SECTION 5.(a)** G.S. 14-409.46 reads as rewritten:

"**§ 14-409.46. Sport shooting range protection.**

(a) Notwithstanding any other provision of law, a person who owns, operates, or uses a sport shooting range in this State shall not be subject to civil liability or criminal prosecution in any matter relating to noise or noise pollution resulting from the operation or use of the range if the range ~~was in existence at least three years prior to the effective date of this Article and the range was~~ is in compliance with any noise control laws or ordinances that applied to the range and its operation at the time the range began operation.

(b) A person who owns, operates, or uses a sport shooting range is not subject to an action for nuisance on the basis of noise or noise pollution, and a State court shall not enjoin the use or operation of a range on the basis of noise or noise pollution, if the range ~~was in existence at least three years prior to the effective date of this Article and the range was~~ is in compliance with any noise control laws or ordinances that applied to the range and its operation at the time the range began operation.

(c) Rules adopted by any State department or agency for limiting levels of noise in terms of decibel level that may occur in the outdoor atmosphere shall not apply to a sport shooting range ~~exempted from liability under this Article.~~ that was in operation prior to the adoption of the rule.

(d) A person who acquires title to real property adversely affected by the use of property with a permanently located and improved sport shooting range constructed and initially operated prior to the time the person acquires title shall not maintain a nuisance action on the basis of noise or noise pollution against the person who owns the range to restrain, enjoin, or impede the use of the range. If there is a substantial change in use of the range after the person acquires title, the person may maintain a nuisance action if the action is brought within one year of the date of a substantial change in use. This section does not prohibit actions for negligence or recklessness in the operation of the range or by a person using the range.

(e) A sport shooting range that is operated and is not in violation of existing law at the time of the enactment of an ordinance ~~and was in existence at least three years prior to the effective date of this Article,~~ shall be permitted to continue in operation even if the operation of the sport shooting range at a later date does not conform to the new ordinance or an amendment to an existing ordinance, provided there has been no substantial change in use."

**SECTION 5.(b)** G.S. 14-409.47 reads as rewritten:

"**§ 14-409.47. Application of Article.**

Except as otherwise provided in this Article, this Article does not prohibit a local government from regulating the location and construction of a sport shooting range after ~~the effective date of this Article.~~ September 1, 1997."

**SECTION 6.** G.S. 14-415.4(a) reads as rewritten:

"(a) Definitions. – The following definitions apply in this section:
  (1) Firearms rights. – The legal right in this State of a person to purchase, own, possess, or have in the person's custody, care, or control any firearm or any weapon of mass death and destruction as those terms are defined in G.S. 14-415.1 and G.S. 14-288.8(c). ~~The term does not include any weapon defined in G.S. 14-409(a).~~
  (2) Nonviolent felony. – The term nonviolent felony does not include any felony that is a Class A, Class B1, or Class B2 felony. Also, the term nonviolent felony does not include any Class C through Class I felony that is one of the following:

a. An offense that includes assault as an essential element of the offense.
b. An offense that includes the possession or use of a firearm or other deadly weapon as an essential or nonessential element of the offense, or the offender was in possession of a firearm or other deadly weapon at the time of the commission of the offense.
c. An offense for which the offender was armed with or used a firearm or other deadly weapon.
d. An offense for which the offender must register under Article 27A of Chapter 14 of the General Statutes."

**SECTION 7.** G.S. 14-415.12(b) reads as rewritten:

"(b) The sheriff shall deny a permit to an applicant who:
(1) Is ineligible to own, possess, or receive a firearm under the provisions of State or federal law.
(2) Is under indictment or against whom a finding of probable cause exists for a felony.
(3) Has been adjudicated guilty in any court of a felony, unless: (i) the felony is an offense that pertains to antitrust violations, unfair trade practices, or restraints of trade, or (ii) the person's firearms rights have been restored pursuant to G.S. 14-415.4.
(4) Is a fugitive from justice.
(5) Is an unlawful user of, or addicted to marijuana, alcohol, or any depressant, stimulant, or narcotic drug, or any other controlled substance as defined in 21 U.S.C. § 802.
(6) Is currently, or has been previously adjudicated by a court or administratively determined by a governmental agency whose decisions are subject to judicial review to be, lacking mental capacity or mentally ill. Receipt of previous consultative services or outpatient treatment alone shall not disqualify an applicant under this subdivision.
(7) Is or has been discharged from the Armed Forces of the United States under conditions other than honorable.
(8) Is Except as provided in subdivision (8a), (8b), or (8c) of this section, is or has been adjudicated guilty of or received a prayer for judgment continued or suspended sentence for one or more crimes of violence constituting a misdemeanor, including but not limited to, a violation of a misdemeanor under Article 8 of Chapter 14 of the General Statutes,Statutes except for a violation of G.S. 14-33(a), or a violation of a misdemeanor under G.S. 14-225.2, 14-226.1, G.S. 14-226.1, 4-258.1, 14-269.2, 14-269.3, 14-269.4, 14-269.6, 14-276.1, 14-277, 14-277.1, 14-277.2, 14-277.3A, 14-281.1, 14-283, 14-283 except for a violation involving fireworks exempted under G.S. 14-414, 14-288.2, 14-288.4(a)(1) or (2), 14-288.4(a)(1), 14-288.6, 14-288.9, former 14-288.12, former 14-288.13, former 14-288.14, 14-288.20A, 14-318.2, 14-415.21(b), 14-415.26(d), or former G.S. 14-277.3. or 14-415.26(d) within three years prior to the date on which the application is submitted.
(8a) Is or has been adjudicated guilty of or received a prayer for judgment continued or suspended sentence for one or more crimes of violence constituting a misdemeanor under G.S. 14-33(c)(1), 14-33(c)(2), 14-33(c)(3), 14-33(d), 14-277.3A, 14-318.2, 14-134.3, 50B-4.1, or former G.S. 14-277.3.
(8b) Is prohibited from possessing a firearm pursuant to 18 U.S.C. § 922(g) as a result of a conviction of a misdemeanor crime of domestic violence.
(8c) Has been adjudicated guilty of or received a prayer for judgment continued or suspended sentence for one or more crimes involving an assault or a threat to assault a law enforcement officer, probation or parole officer, person employed at a State or local detention facility, firefighter, emergency medical technician, medical responder, or emergency department personnel.

(9) Has had entry of a prayer for judgment continued for a criminal offense which would disqualify the person from obtaining a concealed handgun permit.
(10) Is free on bond or personal recognizance pending trial, appeal, or sentencing for a crime which would disqualify him from obtaining a concealed handgun permit.
(11) Has been convicted of an impaired driving offense under G.S. 20-138.1, 20-138.2, or 20-138.3 within three years prior to the date on which the application is submitted."

**SECTION 8.** G.S. 113-291.1(c) reads as rewritten:
"(c) It is a Class 1 misdemeanor for any person taking wildlife to have in his possession any:
(1) Repealed by Session Laws 2013-369, s. 23, effective October 1, 2013.
(2) Weapon of mass death and destruction as defined in G.S. 14-288.8, other than a suppressor or other device designed to muffle or minimize the report of a firearm or short-barreled rifle that is lawfully possessed by a person in compliance with 26 U.S.C. Chapter 53 §§ 5801-5871.

The Wildlife Resources Commission may prohibit individuals training dogs or taking particular species from carrying axes, saws, tree-climbing equipment, and other implements that may facilitate the unlawful taking of wildlife, except tree-climbing equipment may be carried and used by persons lawfully taking raccoons and opossums during open season."

**SECTION 9.** G.S. 14-415.21 reads as rewritten:
"**§ 14-415.21. Violations of this Article punishable as an infraction.**
(a) A person who has been issued a valid permit who is found to be carrying a concealed handgun without the permit in the person's possession or who fails to disclose to any law enforcement officer that the person holds a valid permit and is carrying a concealed handgun, as required by G.S. 14-415.11, shall be guilty of an infraction and shall be punished in accordance with G.S. 14-3.1. Any person who has been issued a valid permit who is found to be carrying a concealed handgun in violation of G.S. 14-415.11(c)(8) shall be guilty of an infraction and may be required to pay a fine of up to five hundred dollars ($500.00). In lieu of paying a fine the person may surrender the permit.
(a1) A person who has been issued a valid permit who is found to be carrying a concealed handgun in violation of subdivision (c)(8) or subsection (c2) of G.S. 14-415.11 shall be guilty of a Class 1 misdemeanor.
(b) A person who violates the provisions of this Article other than as set forth in subsection (a) or (a1) of this section is guilty of a Class 2 misdemeanor."

**SECTION 10.(a)** G.S. 14-403 reads as rewritten:
"**§ 14-403. Permit issued by sheriff; form of permit; expiration of permit.**
The sheriffs of any and all counties of this State shall issue to any person, firm, or corporation in any county a permit to purchase or receive any weapon mentioned in this Article from any person, firm, or corporation offering to sell or dispose of the weapon. The permit shall expire five years from the date of issuance. The permit shall be in the following form:be a standard form created by the State Bureau of Investigation in consultation with the North Carolina Sheriffs' Association, shall be of a uniform size and material, and shall be designed with security features intended to minimize the ability to counterfeit or replicate the permit and shall be set forth as follows:
North Carolina,
_____ County.
I, _____, Sheriff of said County, do hereby certify that I have conducted a criminal background check of the applicant, _____ whose place of residence is_____ in _____ (or) in _____ Township, _____ County, North Carolina, and have received no information to indicate that it would be a violation of State or federal law for the applicant to purchase, transfer, receive, or possess a handgun. The applicant has further satisfied me as to his, her (or) their good moral character. Therefore, a permit is issued to _____ to purchase one pistol from any person, firm or corporation authorized to dispose of the same.
This permit expires five years from its date of issuance.
This __ day of _____, ____.

_____
Sheriff.

The standard permit created by this section shall be used statewide by the sheriffs of any and all counties and, when issued by a sheriff, shall also contain an embossed seal unique to the office of the issuing sheriff."

**SECTION 10.(b)** Permits issued pursuant to Article 52A of Chapter 14 of the General Statutes prior to the effective date of subsection (a) of this section shall remain valid until expiration. Any person possessing a valid permit issued prior to the effective date of subsection (a) of this section may exchange that permit for an updated permit from the sheriff that issued the original permit with no further application required. Any permit issued in exchange shall expire on the same date as the original permit for which it was exchanged.

**SECTION 10.(c)** The State Bureau of Investigation shall make reasonable efforts to notify federally licensed firearm dealers in this State of the new permit appearance and requirements implemented by subsection (a) of this section.

**SECTION 10.(d)** G.S. 14-404 reads as rewritten:

"**§ 14-404. Issuance or refusal of permit; appeal from refusal; grounds for refusal; sheriff's fee.**

(a) Upon application, the sheriff shall issue the permit to a resident of that county, unless the purpose of the permit is for collecting, in which case a sheriff can issue a permit to a nonresident, when the sheriff has done all of the following:

(1) Verified, before the issuance of a permit, by a criminal history background investigation that it is not a violation of State or federal law for the applicant to purchase, transfer, receive, or possess a handgun. The sheriff shall determine the criminal and background history of any applicant by accessing computerized criminal history records as maintained by the State Bureau of Investigation and the Federal Bureau of Investigation, by conducting a national criminal history records check, by conducting a check through the National Instant Criminal Background Check System (NICS), and by conducting a criminal history check through the Administrative Office of the Courts.

(2) Fully satisfied himself or herself by affidavits, oral evidence, or otherwise, as to the good moral character of the applicant. For purposes of determining an applicant's good moral character to receive a permit, the sheriff shall only consider an applicant's conduct and criminal history for the five-year period immediately preceding the date of the application.

(3) Fully satisfied himself or herself that the applicant desires the possession of the weapon mentioned for (i) the protection of the home, business, person, family or property, (ii) target shooting, (iii) collecting, or (iv) hunting.

(b) If the sheriff is not fully satisfied, the sheriff may, for good cause shown, decline to issue the permit and shall provide to the applicant within seven days of the refusal a written statement of the reason(s) for the refusal. The statement shall cite the specific facts upon which the sheriff concluded that the applicant was not qualified for the issuance of a permit and list, by statute number, the applicable law upon which the denial is based. An appeal from the refusal shall lie by way of petition to the ~~chief judge of the district court for~~superior court in the district in which the application was filed. The determination by the court, on appeal, shall be upon the facts, the law, and the reasonableness of the sheriff's refusal, and shall be final.

…

(e) The sheriff shall charge for the sheriff's services upon receipt of an application a fee of five dollars ($5.00) for each permit requested. There shall be no limit as to the number or frequency of permit applications and no other costs or fees other than provided in this subsection shall be charged for the permit, including, but not limited to, any costs for investigation, processing, or medical background checks by the sheriff or others providing records to the sheriff.

(e1) The application for a permit shall be on a form created by the State Bureau of Investigation in consultation with the North Carolina Sheriffs' Association. This application shall be used by all sheriffs and must be provided by the sheriff both electronically and in paper form. Only the following shall be required to be submitted by an applicant for a permit:

(1) The permit application developed pursuant to this subsection.

(2) Five dollars for each permit requested pursuant to subsection (e) of this section.

(3) A government issued identification confirming the identity of the applicant.

(4) Proof of residency.
(5) A signed release, in a form to be prescribed by the Administrative Office of the Court, that authorizes and requires disclosure to the sheriff of any court orders concerning the mental health or capacity of the applicant to be used for the sole purpose of determining whether the applicant is disqualified to receive a permit pursuant to this section.
No additional document or evidence shall be required from any applicant.
…
(i) A person or entity shall promptly disclose to the sheriff, upon presentation by the applicant or sheriff of an original or photocopied release form described in subdivision (5) of subsection (e1) of this section, any court orders concerning the mental health or capacity of the applicant who signed the release form."

**SECTION 10.5.** The Department of Public Safety, in consultation with the Office of Information Technology Services and the Federal Bureau of Investigation, shall study the development of a system to allow a background check to be conducted in private transfers of firearms. The study shall consider methods that would allow the seller or transferor to access the Criminal Justice Law Enforcement Automated Data Services (CJLEADS), the National Instant Criminal Background Check System (NICS), or another similar system that would provide information to the seller or transferor regarding the purchaser or transferee's eligibility to purchase a pistol.

The Department shall report its findings and any recommended legislation to the Joint Legislative Oversight Committee on Justice and Public Safety on or before January 1, 2019.

**SECTION 11.(a)** G.S. 122C-54(d1) is repealed.
**SECTION 11.(b)** G.S. 122C-54.1 is recodified as G.S. 14-409.42.
**SECTION 11.(c)** G.S. 14-404(c1) is repealed.
**SECTION 11.(d)** Article 53B of Chapter 14 of the General Statutes is amended by adding a new section to read:
"**§ 14-409.43. Reporting of certain disqualifiers to the National Instant Criminal Background Check System (NICS).**
(a) Excluding Saturdays, Sundays, and holidays, not later than 48 hours after receiving notice of any of the following judicial determinations or findings, the clerk of superior court in the county where the determination or finding was made shall work through the Administrative Office of the Courts to cause a record of the determination or finding to be transmitted to the National Instant Criminal Background Check System (NICS):
(1) A determination that an individual shall be involuntarily committed to a facility for inpatient mental health treatment upon a finding that the individual is mentally ill and a danger to self or others.
(2) A determination that an individual shall be involuntarily committed to a facility for outpatient mental health treatment upon a finding that the individual is mentally ill and, based on the individual's treatment history, in need of treatment in order to prevent further disability or deterioration that would predictably result in a danger to self or others.
(3) A determination that an individual shall be involuntarily committed to a facility for substance abuse treatment upon a finding that the individual is a substance abuser and a danger to self or others.
(4) A finding that an individual is not guilty by reason of insanity.
(5) A finding that an individual is mentally incompetent to proceed to criminal trial.
(6) A finding that an individual lacks the capacity to manage the individual's own affairs due to marked subnormal intelligence or mental illness, incompetency, condition, or disease.
(7) A determination to grant a petition to an individual for the removal of disabilities pursuant to G.S. 14-409.42 or any applicable federal law.
The 48-hour period for transmitting a record of a judicial determination or finding to the NICS under subsection (a) of this section begins upon receipt by the clerk of a copy of the judicial determination or finding. The Administrative Office of the Courts shall adopt rules to require clerks of court to transmit information to the NICS in a uniform manner.

(b) Excluding Saturdays, Sundays, and holidays, not later than 48 hours after receiving notice of the issuance of a felony warrant, indictment, criminal summons, or order for arrest, the Administrative Office of the Courts shall transmit any unserved felony warrants, indictments, criminal summons, or order for arrests to the NCIC (or National Instant Criminal Background Check System (NICS)).

(c) Excluding Saturdays, Sundays, and holidays, not later than 48 hours after service by the sheriff of an order issued by a judge pursuant to Chapter 50B of the General Statutes and pursuant to G.S. 50B-3(d) the sheriff shall cause a record of the order to be transmitted to the National Instant Criminal Information System."

**SECTION 11.(e)** G.S. 122C-54(d2) reads as rewritten:

"(d2) The record of involuntary commitment for inpatient or outpatient mental health treatment or for substance abuse treatment required ~~by subsection (d1) of this section~~ to be reported to the National Instant Criminal Background Check System (NICS) by G.S. 14-409.43 shall be accessible only by ~~an entity having proper access to NICS~~ the sheriff or the sheriff's designee for the purposes of conducting background checks under G.S. 14-404 and shall remain otherwise confidential as provided by this Article. ~~The Administrative Office of the Courts shall adopt rules to require clerks of court to transmit information to the NICS as required by subsection (d1) of this section in a uniform manner.~~"

**SECTION 11.(f)** G.S. 14-404(a) reads as rewritten:

"(a) Upon application, and such application must be provided by the sheriff electronically, the sheriff shall issue the permit to a resident of that county, unless the purpose of the permit is for collecting, in which case a sheriff can issue a permit to a nonresident, when the sheriff has done all of the following:

…."

**SECTION 11.(g)** G.S. 14-415.13(a) reads as rewritten:

"(a) A person shall apply to the sheriff of the county in which the person resides to obtain a concealed handgun permit. The applicant shall submit to the sheriff all of the following:

(1) An application, completed under oath, on a form provided by the ~~sheriff.~~sheriff, and such application form must be provided by the sheriff electronically. The sheriff shall not request employment information, character affidavits, additional background checks, photographs, or other information unless specifically permitted by this Article.

…."

**SECTION 11.(h)** G.S. 15A-502 reads as rewritten:

"**§ 15A-502. Photographs and fingerprints.**

(a) A person charged with the commission of a felony or a misdemeanor may be photographed and his fingerprints may be taken for law-enforcement records only when he has been:

(1) Arrested or committed to a detention facility, or
(2) Committed to imprisonment upon conviction of a crime, or
(3) Convicted of a felony.

(a1) It shall be the duty of the arresting law-enforcement agency to cause a person charged with the commission of a felony to be fingerprinted and to forward those fingerprints to the State Bureau of Investigation.

(a2) It shall be the duty of the arresting law enforcement agency to cause a person charged with the commission of any of the following misdemeanors to be fingerprinted, for the purposes of reporting these offenses to the National Criminal Instant Background Check System (NICS), and to forward those fingerprints to the State Bureau of Investigation:

(1) G.S. 14-134.3 (Domestic criminal trespass), G.S. 15A-1382.1 (Offense that involved domestic violence), or G.S. 50B-4.1 (Violation of a valid protective order).
(2) G.S. 20-138.1 (Impaired driving), G.S. 20-138.2 (Impaired driving in commercial vehicle), G.S. 20-138.2A (Operating a commercial vehicle after consuming alcohol), and G.S. 20-138.2B (Operating various school, child care, EMS, firefighting, or law enforcement vehicles after consuming alcohol).
(3) G.S. 90-95(a)(3) (Possession of a controlled substance).

Case 5:14-cv-00369-BO   Document 61-1   Filed 08/07/15   Page 8 of 14

(a3) It shall be the duty of the arresting law enforcement agency to cause a person charged with a crime to provide to the magistrate as much of the following information as possible for the person arrested:
  (1) Name including first, last, middle, maiden, and nickname or alias.
  (2) Address including street, city, and state.
  (3) Drivers license number and state of issuance.
  (4) Date of birth.
  (5) Sex.
  (6) Race.
  (7) Social Security number.
  (8) Relationship to the alleged victim and whether it is a "personal relationship" as defined by G.S. 50B-1(b).

(a4) It shall be the duty of the arresting law enforcement agency to cause a person who has been charged with a misdemeanor offense of assault, stalking, or communicating a threat and held under G.S. 15A-534.1 to be fingerprinted for the purposes of reporting these offenses to the National Criminal Instant Background Check System (NICS) and to forward those fingerprints to the State Bureau of Investigation.

(a5) It shall be the duty of the magistrate to enter into the court information system all information provided by the arresting law enforcement agency on the person arrested.

~~(a2)~~(a6) If the person cannot be identified by a valid form of identification, it shall be the duty of the arresting law-enforcement agency to cause a person charged with the commission of:
  (1) Any offense involving impaired driving, as defined in G.S. 20-4.01(24a), or
  (2) Driving while license revoked if the revocation is for an Impaired Driving License Revocation as defined in G.S. 20-28.2
to be fingerprinted and photographed.

(b) This section does not authorize the taking of photographs or fingerprints when the offense charged is a Class 2 or 3 misdemeanor under Chapter 20 of the General Statutes, "Motor Vehicles." Notwithstanding the prohibition in this subsection, a photograph may be taken of a person who operates a motor vehicle on a street or highway if:
  (1) The person is cited by a law enforcement officer for a motor vehicle moving violation, and
  (2) The person does not produce a valid drivers license upon the request of a law enforcement officer, and
  (3) The law enforcement officer has a reasonable suspicion concerning the true identity of the person.
As used in this subsection, the phrase "motor vehicle moving violation" does not include the offenses listed in the third paragraph of G.S. 20-16(c) for which no points are assessed, nor does it include equipment violations specified in Part 9 of Article 3 of Chapter 20 of the General Statutes.

(b1) Any photograph authorized by subsection (b) of this section and taken by a law enforcement officer or agency:
  (1) Shall only be taken of the operator of the motor vehicle, and only from the neck up.
  (2) Shall be taken at either the location where the citation is issued, or at the jail if an arrest is made.
  (3) Shall be retained by the law enforcement officer or agency until the final disposition of the case.
  (4) Shall not be used for any purpose other than to confirm the identity of the alleged offender.
  (5) Shall be destroyed by the law enforcement officer or agency upon a final disposition of the charge.

(c) This section does not authorize the taking of photographs or fingerprints of a juvenile alleged to be delinquent except under Article 21 of Chapter 7B of the General Statutes.

(d) This section does not prevent the taking of photographs, moving pictures, video or sound recordings, fingerprints, or the like to show a condition of intoxication or for other evidentiary use.

(e) Fingerprints or photographs taken pursuant to subsection (a), (a1), or (a2) of this section may be forwarded to the State Bureau of Investigation, the Federal Bureau of Investigation, or other law-enforcement agencies."

**SECTION 11.(i)** The Administrative Office of the Courts shall use the sum of up to twenty thousand dollars ($20,000) available to it for the 2014-2015 fiscal year from the Court Information Technology Fund to comply with the portions of subsection (d) of this section applicable to the Administrative Office of the Courts and to provide all of the following historical records to the National Instant Criminal Background Check System (NICS) by May 31, 2019:

(1) Involuntary commitments for inpatient and outpatient mental health and substance abuse treatment from all counties.
(2) Findings of not guilty by reason of insanity or mentally incompetent to stand trial from all counties.
(3) Findings that an individual lacks the capacity to manage the individual's own affairs due to marked subnormal intelligence or mental illness, incompetency, condition, or disease from all counties.
(4) Convictions for misdemeanor possession of controlled substances under G.S. 90-95(a)(3) from all counties from January 1, 2009.
(5) Convictions for all misdemeanors as identified in G.S. 14-134.3, 15A-1382.1, or 50B-4.1 from all counties.
(6) Convictions for all misdemeanors as identified in G.S. 20-138.1, 20-138.2, 20-138.2A, and 20-138.2B or convicted and sentenced under G.S. 20-179(f3) for more than two years from all counties.
(7) Active and unserved felony warrants, indictments, criminal summons, and orders for arrest from all counties.

No later than January 1, 2018, the Administrative Office of the Courts shall report to the Joint Legislative Oversight Committee on Justice and Public Safety and the Joint Legislative Oversight Committee on Information Technology on the progress made towards providing the information required by subsection (d) of this section and providing the historical records to NICS.

**SECTION 11.(j)** G.S. 14-404(g) reads as rewritten:
"(g) An applicant shall not be ineligible to receive a permit under subdivision (c)(4) of this section because of involuntary commitment to mental health services if the individual's rights have been restored under ~~G.S. 122C-54.1.~~ G.S. 14-409.42."

**SECTION 11.(k)** G.S. 14-415.3(c) reads as rewritten:
"(c) The provisions of this section shall not apply to a person whose rights have been restored pursuant to ~~G.S. 122C-54.1.~~ G.S. 14-409.42."

**SECTION 11.(l)** G.S. 14-415.12(c) reads as rewritten:
"(c) An applicant shall not be ineligible to receive a concealed carry permit under subdivision (6) of subsection (b) of this section because of an adjudication of mental incapacity or illness or an involuntary commitment to mental health services if the individual's rights have been restored under ~~G.S. 122C-54.1.~~ G.S. 14-409.42."

**SECTION 11.(m)** G.S. 122C-54.1(a), recodified as G.S. 14-409.42(a) by subsection (b) of this section, reads as rewritten:
"(a) Any individual over the age of 18 may petition for the removal of the disabilities pursuant to 18 U.S.C. § 922(d)(4) and (g)(4), G.S. 14-415.3, and G.S. 14-415.12 arising out of a determination or finding required to be transmitted to the National Instant Criminal Background Check System by subdivisions (1) through (6) ~~of subsection (d1) of G.S. 122C-54.~~ of subsection (a) of G.S. 14-409.43. The individual may file the petition with a district court judge upon the expiration of any current inpatient or outpatient commitment."

**SECTION 11.(n)** G.S. 15A-534(a) reads as rewritten:
"(a) In determining conditions of pretrial release a judicial official must impose at least one of the following conditions:
(1) Release the defendant on his written promise to appear.
(2) Release the defendant upon his execution of an unsecured appearance bond in an amount specified by the judicial official.
(3) Place the defendant in the custody of a designated person or organization agreeing to supervise him.

Case 5:14-cv-00369-BO   Document 61-1   Filed 08/07/15   Page 10 of 14

(4) Require the execution of an appearance bond in a specified amount secured by a cash deposit of the full amount of the bond, by a mortgage pursuant to G.S. 58-74-5, or by at least one solvent surety.
(5) House arrest with electronic monitoring.

If condition (5) is imposed, the defendant must execute a secured appearance bond under subdivision (4) of this subsection. If condition (3) is imposed, however, the defendant may elect to execute an appearance bond under subdivision (4). If the defendant is required to provide fingerprints pursuant to ~~G.S. 15A-502(a1) or (a2),~~ G.S. 15A-502(a1), (a2), (a4), or (a6), or a DNA sample pursuant to G.S. 15A-266.3A or G.S. 15A-266.4, and (i) the fingerprints or DNA sample have not yet been taken or (ii) the defendant has refused to provide the fingerprints or DNA sample, the judicial official shall make the collection of the fingerprints or DNA sample a condition of pretrial release. The judicial official may also place restrictions on the travel, associations, conduct, or place of abode of the defendant as conditions of pretrial release. The judicial official may include as a condition of pretrial release that the defendant abstain from alcohol consumption, as verified by the use of a continuous alcohol monitoring system, of a type approved by the Division of Adult Correction of the Department of Public Safety, and that any violation of this condition be reported by the monitoring provider to the district attorney."

**SECTION 11.(o)** Subsections (f) and (g) of this section become effective October 1, 2015, and apply to applications submitted on or after that date. Subsections (h) and (n) of this section become effective on October 1, 2015. Subsections (a), (d), and (m) of this section become effective on January 1, 2016. The remaining subsections of this section are effective when this act becomes law.

**SECTION 12.** G.S. 14-409.40 reads as rewritten:
"**§ 14-409.40. Statewide uniformity of local regulation.**

(a) It is declared by the General Assembly that the regulation of firearms is properly an issue of general, statewide concern, and that the entire field of regulation of firearms is preempted from regulation by local governments except as provided by this section.

(a1) The General Assembly further declares that the lawful design, marketing, manufacture, distribution, sale, or transfer of firearms or ammunition to the public is not an unreasonably dangerous activity and does not constitute a nuisance per se and furthermore, that it is the unlawful use of firearms and ammunition, rather than their lawful design, marketing, manufacture, distribution, sale, or transfer that is the proximate cause of injuries arising from their unlawful use. This subsection applies only to causes of action brought under subsection (g) of this section.

(b) Unless otherwise permitted by statute, no county or municipality, by ordinance, resolution, or other enactment, shall regulate in any manner the possession, ownership, storage, transfer, sale, purchase, licensing, taxation, manufacture, transportation, or registration of firearms, firearms ammunition, components of firearms, dealers in firearms, or dealers in handgun components or parts.

(c) Notwithstanding subsection (b) of this section, a county or municipality, by zoning or other ordinance, may regulate or prohibit the sale of firearms at a location only if there is a lawful, general, similar regulation or prohibition of commercial activities at that location. Nothing in this subsection shall restrict the right of a county or municipality to adopt a general zoning plan that prohibits any commercial activity within a fixed distance of a school or other educational institution except with a special use permit issued for a commercial activity found not to pose a danger to the health, safety, or general welfare of persons attending the school or educational institution within the fixed distance.

(d) No county or municipality, by zoning or other ordinance, shall regulate in any manner firearms shows with regulations more stringent than those applying to shows of other types of items.

(e) A county or municipality may regulate the transport, carrying, or possession of firearms by employees of the local unit of government in the course of their employment with that local unit of government.

(f) Nothing contained in this section prohibits municipalities or counties from application of their authority under G.S. 153A-129, 160A-189, 14-269, 14-269.2, 14-269.3, 14-269.4, 14-277.2, 14-415.11, 14-415.23, including prohibiting the possession of firearms in public-owned buildings, on the grounds or parking areas of those buildings, or in public parks or recreation areas, except nothing in this subsection shall prohibit a person from storing a

firearm within a motor vehicle while the vehicle is on these grounds or areas. Nothing contained in this section prohibits municipalities or counties from exercising powers provided by law in states of emergency declared under Article 1A of Chapter 166A of the General Statutes.

(g) The authority to bring suit and the right to recover against any firearms or ammunition marketer, manufacturer, distributor, dealer, seller, or trade association by or on behalf of any governmental unit, created by or pursuant to an act of the General Assembly or the Constitution, or any department, agency, or authority thereof, for damages, abatement, injunctive relief, or any other remedy resulting from or relating to the lawful design, marketing, manufacture, distribution, sale, or transfer of firearms or ammunition to the public is reserved exclusively to the State. Any action brought by the State pursuant to this section shall be brought by the Attorney General on behalf of the State. This section shall not prohibit a political subdivision or local governmental unit from bringing an action against a firearms or ammunition marketer, manufacturer, distributor, dealer, seller, or trade association for breach of contract or warranty for defect of materials or workmanship as to firearms or ammunition purchased by the political subdivision or local governmental unit.

(h) A person adversely affected by any ordinance, rule, or regulation promulgated or caused to be enforced by any county or municipality in violation of this section may bring an action for declaratory and injunctive relief and for actual damages arising from the violation. The court shall award the prevailing party in an action brought under this subsection reasonable attorneys' fees and court costs as authorized by law."

**SECTION 13.** Article 53B of Chapter 14 of the General Statutes is amended by adding a new section to read:

"**§ 14-409.41. Chief law enforcement officer certification; certain firearms.**

(a) Definitions. – The following definitions apply in this section:
  (1) Certification. – The participation and assent of the chief law enforcement officer necessary under federal law for the approval of the application to transfer or make a firearm.
  (2) Chief law enforcement officer. – Any official that the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives, or any successor agency, has identified by regulation or otherwise as eligible to provide any required certification for the transfer or making of a firearm.
  (3) Firearm. – Any firearm that meets the definition of firearm in 26 U.S.C. § 5845.

(b) When a chief law enforcement officer's certification is required by federal law or regulation for the transfer or making of a firearm, the chief law enforcement officer shall, within 15 days of receipt of a request for certification, provide the certification if the applicant is not prohibited by State or federal law from receiving or possessing the firearm and is not the subject of a proceeding that could result in the applicant being prohibited by State or federal law from receiving or possessing the firearm. If the chief law enforcement officer is unable to make a certification as required by this section, the chief law enforcement officer shall provide the applicant with a written notification of the denial and the reason for the denial.

Nothing in this section shall require a chief law enforcement officer to make a certification the chief law enforcement officer knows to be untrue, but the chief law enforcement officer may not refuse to provide certification based on a generalized objection to private persons or entities making, possessing, or receiving firearms or any certain type of firearm the possession of which is not prohibited by law.

(c) An applicant whose request for certification is denied may appeal the decision of the chief law enforcement officer to the district court of the district in which the request for certification was made. The court shall make a de novo review of the chief law enforcement officer's decision to deny the certification. If the court finds that the applicant is not prohibited by State or federal law from receiving or possessing the firearm, is not the subject of a proceeding that could result in the applicant being prohibited by State or federal law from receiving or possessing the firearm, and that no substantial evidence supports the chief law enforcement officer's determination that the chief law enforcement officer cannot truthfully make the certification, the court shall order the chief law enforcement officer to issue the certification and award court costs and reasonable attorneys' fees to the applicant.

(d) Chief law enforcement officers and their employees who act in good faith are immune from liability arising from any act or omission in making a certification as required by this section."

**SECTION 14.** G.S. 14-415.15(a) reads as rewritten:

"(a) Except as permitted under subsection (b) of this section, within 45 days after receipt of the items listed in G.S. 14-415.13 from an applicant, and receipt of the required records concerning the mental health or capacity of the applicant, the sheriff shall either issue or deny the permit. The sheriff may conduct any investigation necessary to determine the qualification or competency of the person applying for the permit, including record checks. The sheriff shall make the request for any records concerning the mental health or capacity of the applicant within 10 days of receipt of the items listed in G.S. 14-415.13. No person, company, mental health provider, or governmental entity may charge additional fees to the applicant for background checks conducted under this subsection. A permit shall not be denied unless the applicant is determined to be ineligible pursuant to G.S. 14-415.12."

**SECTION 15.** G.S. 14-415.23 is amended by adding a new subsection to read:

"(e) A person adversely affected by any ordinance, rule, or regulation promulgated or caused to be enforced by any unit of local government in violation of this section may bring an action for declaratory and injunctive relief and for actual damages arising from the violation. The court shall award the prevailing party in an action brought under this subsection reasonable attorneys' fees and court costs as authorized by law."

**SECTION 17.** G.S. 14-415.12(a) reads as rewritten:

"(a) The sheriff shall issue a permit to an applicant if the applicant qualifies under the following criteria:
(1) The applicant is a citizen of the United States or has been lawfully admitted for permanent residence as defined in 8 U.S.C. § 1101(a)(20), and has been a resident of the State 30 days or longer immediately preceding the filing of the application.
(2) The applicant is 21 years of age or older.
(3) The applicant does not suffer from a physical or mental infirmity that prevents the safe handling of a handgun.
(4) The applicant has successfully completed an approved firearms safety and training course which involves the actual firing of handguns and instruction in the laws of this State governing the carrying of a concealed handgun and the use of deadly force. The North Carolina Criminal Justice Education and Training Standards Commission shall prepare and publish general guidelines for courses and qualifications of instructors which would satisfy the requirements of this subdivision. An approved course shall be any course which satisfies the requirements of this subdivision and is certified or sponsored by:
    a. The North Carolina Criminal Justice Education and Training Standards Commission,
    b. The National Rifle Association, or
    c. A law enforcement agency, college, private or public institution or organization, or firearms training school, taught by instructors certified by the North Carolina Criminal Justice Education and Training Standards Commission or the National Rifle Association.
Every instructor of an approved course shall file a copy of the firearms course description, outline, and proof of certification annually, or upon modification of the course if more frequently, with the North Carolina Criminal Justice Education and Training Standards Commission.
(5) The applicant is not disqualified under subsection (b) of this section."

**SECTION 18.** Subsections (a), (b), and (c) of Section 1, and Sections 2, 3, and 8 of this act become effective July 1, 2015, and apply to offenses committed on or after that date. Section 5 of this act becomes effective July 1, 2015, but shall not apply to pending litigation. Section 6 of this act is effective when it becomes law and applies to restorations granted before, on, or after that date. Section 7 of this act becomes effective July 1, 2015, and applies to permit applications submitted on or after that date. Section 9 of this act becomes effective December 1, 2015, and applies to offenses committed on or after that date. Section 10 of this act becomes effective December 1, 2015, and applies to permits issued on or after that date. Sections 12 and 15 of this act become effective December 1, 2015, and apply to violations occurring on or after that date. Section 13 of this act becomes effective July 1, 2015. Section 14 becomes effective October 1, 2015, and applies to applications submitted on or after that date. The remainder of this act is effective when it becomes law. Prosecutions for offenses committed before the effective date of this act are not abated or affected by this act, and the statutes that would be applicable but for this act remain applicable to those prosecutions.

In the General Assembly read three times and ratified this the 28th day of July, 2015.

    s/ Daniel J. Forest
       President of the Senate

    s/ Tim Moore
       Speaker of the House of Representatives

    s/ Pat McCrory
       Governor

Approved 3:23 p.m. this 5th day of August, 2015