UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| FELICITY M. TODD VEASEY and SECOND AMENDMENT FOUNDATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> BRINDELL B. WILKINS, JR., in his official capacity as Sheriff of Granville County, North Carolina, PAT McCRORY, in his official capacity as Governor of North Carolina, ROY COOPER, in his official capacity as Attorney General of North Carolina, and FRANK L. PERRY, in his official capacity as Secretary of the North Carolina Department of Public Safety, <br><br> Defendants. | No. 5:14-cv-00369-BO |
| KIRSTEN MESSMER, <br><br> Plaintiff, <br><br> v. <br><br> DONNIE HARRISON, in his Official Capacity as Sheriff of Wake County, North Carolina, PAT McCRORY, in his Official Capacity as Governor of North Carolina, ROY COOPER, in his Official Capacity as Attorney General of North Carolina, and FRANK L. PERRY, in his Official Capacity as Secretary of the North Carolina Department of Public Safety, <br><br> Defendants. | No. 5:15-cv-00097-BO |

**STATE OF NORTH CAROLINA'S RESPONSE TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES UNDER 42 U.S.C. § 1988**

PURSUANT to Local Rule 7.3 *et seq.*, now comes Defendant-in-Intervention, the State of North Carolina, by and through the Attorney General of North Carolina and the undersigned attorney, and respectfully responds to Plaintiffs' motion for attorneys' fees.

In pursuit of efficiency, the Procedural History and Argument sections of the companion cases of Veasey v. Wilkins, Case No. 5:14-cv-00369-BO and Messmer v. Harrison, Case No. 5:15-cv-00097-BO are incorporated by reference herein. Each of those cases involves the same constitutional challenge to N.C.G.S. § 14-415.12(a), which is a State statute that addresses applicant qualifications for a concealed carry permit, as well as similar procedural histories.

## PROCEDURAL HISTORY

On June 25, 2014, Plaintiffs Veasey and the Second Amendment Foundation, Inc. filed their complaint against Sheriff Defendant Wilkins in his official capacity as the Sheriff of Granville County, North Carolina, asserting constitutional challenges to N.C.G.S. § 14-415.12(a). [5:14-cv-00369, DE # 1]. On February 11, 2015 an Amended Complaint was filed to add Defendants Pat McCrory, in his official capacity as Governor of North Carolina; Roy Cooper, in his official capacity as Attorney General of North Carolina; and, Frank L. Perry, in his official capacity as Secretary of the North Carolina Department of Public Safety. [5:14-cv-00369, DE # 33].

On November 5, 2014, Plaintiff Veassey filed an amended motion for preliminary injunction seeking to enjoin Defendants from enforcing the citizenship requirements of N.C.G.S. § 14-415.12(a). [5:14-cv-00369, DE # 20]. On April 2, 2015, Defendants McCrory, Cooper, and Perry filed motions to dismiss Plaintiffs' complaints. [5:14-cv-00369]. The Defendant Sheriffs also filed motions to dismiss Plaintiffs' complaints. [5:14-cv-00369, DE # 14]. On April

24, 2015, the Court granted Plaintiffs' motion for preliminary injunction. [5:14-cv-00369, DE # 46].

On March 10, 2015, Plaintiff Messmer filed her complaint asserting constitutional challenges to N.C.G.S. § 14-415.12(a) naming as defendants Sheriff Defendant Harrison in his official capacity as the Sheriff of Wake County, North Carolina; Pat McCrory, in his official capacity as Governor of North Carolina; Roy Cooper, in his official capacity as Attorney General of North Carolina; and, Frank L. Perry, in his official capacity as Secretary of the North Carolina Department of Public Safety. [5:15-cv-00097, DE # 1]. On March 10, 2015 Plaintiff Messmer filed a motion for preliminary injunction seeking to enjoin Defendants from enforcing the citizenship requirements of N.C.G.S. § 14-415.12(a). [5:15-cv-00097, DE # 2]. On April 6, 2015, Defendants McCrory, Cooper and Perry filed motions to dismiss Plaintiffs' complaints. [5:15-cv-00097, DE # 21]. The Defendant Sheriffs also filed motions to dismiss Plaintiffs' complaints. [5:15-cv-00097, DE # 26]. On April 24, 2015, the Court granted Plaintiff's motion for preliminary injunction. [ 5:15-cv-00097, DE # 24].

On July 31, 2015 and August 5, 2015, this Court granted Defendants McCrory, Cooper and Perry's motion to dismiss Plaintiffs' complaints, but denied the Sheriff Defendants Motions to Dismiss. [5:14-cv-00369, DE # 58; 5:15-cv-00097, DE # 40]. With its Orders, the Court found that the Sherriff Defendants were following State law in applying the citizenship requirements for concealed carry permitting, and were therefore State agents for the purpose of this litigation. Furthermore, according to the Court's order, should the Sheriff Defendants be found to have violated the Plaintiffs' constitutional rights, any fees awarded would be assessed against the Sheriffs in their official capacities, to be paid by the State of North Carolina. [5:14-cv-00369, DE # 43; 5:15-cv-00097, DE # 21].

On August 5, 2015, as part of a comprehensive overhaul of the gun laws in North Carolina, Governor McCrory signed legislation which amended the challenged citizenship requirement of N.C.G.S. § 14-415.12(a). On August 7, 2015, the Sheriffs filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction. [5:14-cv-00369, DE# 60; 5:15-cv-00097, DE# 41]. That same day, Plaintiffs also filed Motions for Attorneys' Fees. [5:14-cv-00369, DE# 64; 5:15-cv-00097, DE# 43]. On October 15, 2015, the State of North Carolina filed a Motion to intervene for the limited purpose of contesting Plaintiffs attorneys' fees. [5:14-cv-00369, DE# 73; 5:15-cv-00097, DE# 52]. On December 2, 2015, this Court granted the Sherriff Defendants motion to dismiss as moot, and granted the State of North Carolina's request for intervention. [5:14-cv-00369, DE# 79; 5:15-cv-00097, DE# 58].

## ARGUMENT

### I. PLAINTIFFS ARE NOT ENTITLED TO ATTORNEYS' FEES BECAUSE THEY ARE NOT THE PREVAILING PARTIES UNDER 42 U.S.C. § 1988.

Under the "American rule" that is ordinarily applicable in our legal system, there is "a general practice of not awarding fees to a prevailing party absent explicit statutory authority." Buckhannon Board & Care Home v. West Virginia Dep't of Health and Human Resources, 532 U.S. 598, (2001). Congress has created such statutory authority with § 1988(b), which in pertinent part, provides that:

> In any action or proceeding to enforce a provision of section[] . . . 1983 [among other provisions], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs
>
> . . . .

42 U.S.C.A. § 1988(b). The term "prevailing party," as used in § 1988(b) and other fee-shifting provisions, is a "legal term of art," Buckhannon, 532 U.S. at 603, and is "interpreted . . . consistently" -- that is, without distinctions based on the particular statutory context in which it

4

appears. Id. at 603 n.4.  In order to permit an award of attorney's fees, the prevailing party must earn an enforceable judgment on the merits that creates a material alteration of the legal relationship of the parties. Id. at 604 (internal citations and quotations omitted).  "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve in the lawsuit, lacks the necessary judicial *imprimatur* on the change.  Our precedents thus counsel against holding that the term 'prevailing party' authorizes an award of attorney's fees *without* a corresponding alteration in the legal relationship of the parties." Id. at 605 (emphasis in original).

### A. Preliminary Injunction Does Not Satisfy the Prevailing Party Standard of § 1988(b).

On March 10, 2015 Plaintiff Messmer filed a motion for preliminary injunction seeking to enjoin the Defendants from enforcing the citizenship requirements of N.C.G.S. § 14-415.12(a). [5:15-cv-00097, DE # 2].  On November 5, 2014, Plaintiff Veassey filed an amended motion for preliminary injunction also seeking to enjoin Defendants from enforcing the citizenship requirements of N.C.G.S. § 14-415.12(a). [5:14-cv-00369, DE # 20].  On April 24, 2015, the Court granted Plaintiffs' respective motions for preliminary injunction. [5:15-cv-00097, DE # 24; 5:14-cv-00369, DE # 46].  Plaintiffs neither received further relief from this court, not received an enforceable judgement on the merits.

In that regard, the Fourth Circuit's opinion in Smyth v. Rivero, 282 F.3d 268 (4th Cir. 2002), cert. denied, 2002 U.S. Lexis 6050 (U.S. Oct. 7, 2002), is pivotal.  In Smyth, seven recipients of aid under the Aid to Families with Dependent Children (AFDC) program challenged a new paternity identification policy in Virginia. The district court entered a preliminary injunction barring Virginia's application of the paternity identification policy upon those plaintiffs. Thereafter, Virginia modified its rule such that it no longer applied to those

5

plaintiffs at all, and the court therefore dismissed the matter as moot. However, the district court granted plaintiffs' attorneys fees as the prevailing party because they had obtained a preliminary injunction, and a partial settlement, which altered the legal relationship of the parties.

With Smyth, the Fourth Circuit confirmed that a party's claim for attorney fees under the "catalyst theory," (the assertion by a party that the action it filed instigated a statutory or policy change in the governing agency) was insufficient to label that party as the "prevailing party," even when the action indirectly precipitated the objectives initially sought by the plaintiff with the lawsuit. According to the Court, that manner of accomplishment lacks the necessary judicial imprimatur reflecting a change of the legal relationship between the parties sufficient to deem that plaintiff a "prevailing party" for the purposes of awarding attorney fees.

The Court then went on to crucially opine that an award of a preliminary injunction to a party, and a subsequent dismissal of the action as moot (i.e. when the subject policy or statutory provision have been amended in conformance with the plaintiff's objectives) also fails to warrant the awarding of attorney fees to that plaintiff as a "prevailing party." According to the Fourth Circuit, a preliminary injunction is merely an incomplete determination of the merits of the action, and fails to bring about a change of relationship of the parties. According to the Court, at most, a movant seeking a preliminary injunction may demonstrate a strong showing of likelihood of success, or a substantial likelihood of success by clear and convincing evidence. Nevertheless, such a showing by "no "means" represents a determination that the claim in question will or ought to succeed ultimately. Stated alternatively, the awarding of a preliminary injunction does not alter the legal relationship of the parties, and absent such a change, the award of attorney fees is improper.

In addition, the Fourth Circuit noted that the granting of a preliminary injunction is predicated not only upon the likelihood of success of a plaintiff's claims, but also by other considerations, notably a balancing of harms. Id. The interplay of these equitable and legal considerations, with the less stringent assessment of the actual merits of a claim, further diminishes the concept that the successful pursuit of a preliminary granting serves as "enforceable judgment[] on the merits" sufficient to qualify the movant as a "prevailing party" for the purpose of an attorney fees award. Id. at 277 (citing Buckhannon, 532 U.S. at 603). "[A] *preliminary injunction* entered by the district court *does not satisfy* the prevailing party standard of §1988(b)". Id. at 277 (emphasis added). See also, Alpha Iota Omega Christian Fraternity v. Moeser, 2006 U.S. Dist. LEXIS 28065,*44 (M.D.N.C. May 4, 2006) (unpublished) (finding the only court-sanctioned relief Plaintiffs recovered was a preliminary injunction, which is insufficient to qualify Plaintiffs as "prevailing parties" for purposes of Section 1988(b)); Robinson v. Bartlow, 2014 U.S. Dist. LEXIS 75105, *9 (W.D. Va. June 3, 2014) (unpublished) (confirming the United States Court of Appeals for the Fourth Circuit has held that granting a preliminary injunction is not sufficient to confer prevailing party status); Singer Mgmt. Consultants v. Milgram, 650 F.3d 223, 229 (3rd Cir. 2011) (preliminary injunctions and temporary restraining orders are not merit based and parties will not often prevail based solely on those events) cert. denied, 132 S. Ct. 500, 181 L. Ed. 2d 347 (U.S., Oct. 31, 2011).

In the matter *sub judice,* the exclusive relief awarded to plaintiffs was the preliminary injunction enforcing the citizenship requirements of N.C.G.S. § 14-415.12(a). Plaintiffs were not afforded an "enforceable judgement[] on the merits" or "court-ordered consent decree" that created a "material alteration of the legal relationship of the parties" necessary to permit an

7

award of attorneys' fees. Buckhannon, 532 U.S. at 604 (internal citation and quotations omitted). Plaintiffs are not a prevailing party and are not entitled to attorneys' fees pursuant to § 1988(b).

### B.     Plaintiffs' Are Not Entitled to Attorneys' Fees Under a "Catalyst Theory".

Plaintiffs' may contend they are the "prevailing party" because in August 2015 Governor McCrory signed a comprehensive gun law that eliminated the requirement that a person be a United States Citizen to be issued a Concealed Carry Permit. Thereafter, this court granted the Sherriff Defendants motion to dismiss the Plaintiffs' actions as moot. [5:14-cv-00369, DE# 79; 5:15-cv-00097, DE# 58]. However, as previously noted, the United States Supreme Court and the Fourth Circuit have rejected the "catalyst theory," "which posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 601(2001). Specifically, the Supreme Court opined that:

> Petitioners . . . assert that the "catalyst theory" is necessary to prevent defendants from unilaterally mooting an action before judgment in an effort to avoid an award of attorney's fees. They also claim that the rejection of the "catalyst theory" will deter plaintiffs with meritorious but expensive cases from bringing suit. We are skeptical of these assertions, which are entirely speculative and unsupported by any empirical evidence . . . .Petitioners discount the disincentive that the "catalyst theory" may have upon a defendant's decision to voluntarily change its conduct, conduct that may not be illegal.

Id. at 608. Accord Smyth ex rel. Smyth v. Rivero, 282 F.3d 268, 275, 278 (4th Cir. 2002) (noting Buckhannon's rejection of the catalyst theory and holding that a voluntary, unilateral act is not enough for the opposing party to be said to have prevailed for purposes of § 1988(b) - a defendants voluntary change in conduct, although perhaps accomplishing what a plaintiff sought to achieve in the lawsuit, lacks the necessary judicial *imprimatur* on the change) (internal citation and quotations omitted); S-1 v. State Bd. of Educ., 21 F.3d 49, 51 (4th Cir. 1994) (en banc) ("A

8

person may not be a 'prevailing party'. . . except by virtue of having obtained an enforceable judgment, consent decree, or settlement giving some of the legal relief sought" - the fact that a lawsuit may operate as a catalyst for postlitigation changes in a defendant's conduct cannot suffice to establish plaintiff as a prevailing party) cert. denied, S-1 v. State Bd. of Educ., 513 U.S. 876 (1994)[1].

"'Liability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against, that defendant.'" Farrar v. Hobby, 506 U.S. 103, 109, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992) (quoting, Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)). See also, S. Walk at Broadlands Homeowners Ass'n v. Openband at Broadlands, LLC, 713 F.3d 175, 186 (4th Cir. 2013) (dismissal for lack of standing does not constitute a determination on the merits and does not confer prevailing party status); Media Techs. Licensing. LLC v. Upper Deck Co., 334 F.3d 1366, 1370 (Fed. Cir. 2003) (a dismissal for lack of jurisdiction is not a dismissal on the merits).

Therefore, although a small portion of the comprehensive overhaul of the gun laws of North Carolina achieved what the plaintiffs' sought, that "achievement" does not confer upon them the status of "prevailing party." "Defendants have a right to bring this case to an end by changing or clarifying the policy in order to avoid further alleged injury to or controversy with plaintiffs. This should be encouraged, not discouraged." Alpha Iota, 2006 U.S. Dist LEXIS 28065 *45.

Plaintiff cites to the unpublished opinion of Virginia Soc'y for Human Life, Inc. v. Caldwell, (1998, WD Va) 26 F Supp 2d 868, affd without op (1909, CA4 Va) 187 F 3d 633,

---

[1] Plaintiffs cites to S-1 and S-2 v. State Bd. of Educ., 6 F. 3d 160 (4th Cir. 1993) at p. 4 of their Memorandum however, this case was overruled by S-1 v. State Bd. of Educ., 21 F.3d 49, 51 (4th Cir. 1994) (en banc) and adopted the dissenting panel opinion of Judge Wilkinson (6 F. 3d at 168-172) which rejected the catalyst theory.

9

reported in full 1999 U.S. App. LEXIS 18622, (4th Cir. Aug. 10, 1999) to suggest that the grant of preliminary injunction confers prevailing party status. In Caldwell, a political group sought to distribute voter guides and argued that the statutes were overly broad and chilled free speech. The state legislature amended the statutes after the political group obtained a preliminary injunction. Id. at 1-9. The Court denied plaintiff's attorney's fees because plaintiff could not demonstrate that the legislature's changes to the Virginia statues were made "in response" to its litigation against Virginia and plaintiffs were not entitled to prevailing party status under §1988(b) even though plaintiffs had obtained a preliminary injunction against the enforcement of the statues. Id. at 36. In fact, the principles announced by Caldwell are opposite of those suggested by Plaintiffs; the granting of a preliminary injunction in a civil rights action is not final disposition required to become a prevailing party for the purposes of an award of attorneys' fees under §1988(b) since such injunction is only a prognosis of probable or possible success and was not a decision on the merits. Id. at 28-36. Plaintiffs' reliance on this case is misplaced, and reflects a fundamental misunderstanding of what criteria must be met in order to be classified as a "prevailing party" worth of an award of attorney fees.

**II      ASSUMING *ARGUENDO* PLAINTIFFS' ARE ENTITLED TO ATTORNEYS' FEES THE STATE REQUESTS A SUBSTANTIAL REDUCTION.**

Plaintiffs seek to recover $117,128.53 in fees and costs from the State in connection with the instant civil actions. In Veasey Plaintiffs expended 137 hours for fees and costs of $52,674.50, as well as 68.5 hours for out-of-state counsel at an additional cost of $32, 379.46, for a total of 205.5 hours and $85,053.96. In Messmer Plaintiffs expended 82.3 hours for fees and costs of $32,074.57. In the event that this Court is inclined to award any attorney fees, the State respectfully requests that such an award reflect a substantial reduction from those sought by Plaintiffs.

10

The State, in principle, agrees with Plaintiffs' legal conclusion that if the Court decides to award attorneys' fees under this fee-shifting statute, the lodestar method of calculation is appropriate. [5:14-cv-00369, DE # 65 p 5; 5:15-cv-00097, DE # 44 p 2]. However, this Court has discretion as to how to apply this lodestar formula, and whether to adjust the lodestar figure.

The lodestar method generally amounts to "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). The party seeking fees bears the burden of proving the reasonableness of each charge, and courts must endeavor to exclude from the calculation any hours that are "excessive, redundant, or otherwise unnecessary," Id., at 434.

"The proper calculation of an attorney's fee award involves a three-step process." McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013), as amended (Jan. 23, 2014). "First, the court must 'determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate.'" Id. (quoting Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir.2009)). To determine what is a reasonable expenditure of hours and hourly rate, the court is aided by considering the following factors:

1) the time and labor expended;

2) the novelty and difficulty of the questions raised;

3) the skill required to properly perform the legal services rendered;

4) the attorney's opportunity costs in pressing the instant litigation;

5) the customary fee for like work;

6) the attorney's expectations at the outset of the litigation;

7) the time limitations imposed by the client or circumstances;

8) the amount in controversy and the results obtained;

11

9) the experience, reputation, and ability of the attorney;

10) the undesirability of the case within the legal community in which the suit arose;

11) the nature and length of the professional relationship between attorney and client; and,

12) attorneys' fees awards in similar cases.

Id. at 88 n. 5.

The court has discretion to modify a fee upward or downward from the lodestar based on the twelve factors, as well as other considerations. Hensley, 461 U.S. at 434. The burden rests with the fee applicant to establish the reasonableness of the requested hourly rate and the number of hours for which compensation is demanded. Hensley, 461 U.S. at 433. "[H]ours that are excessive, redundant, or otherwise unnecessary" are subject to exclusion by the court. Id.

Second, "the court must 'subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'" McAfee, 738 F.3d at 88. In this context, "there is no certain method of determining when claims are 'related' or 'unrelated.'" Hensley, 461 U.S. at 437. "The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." Id. at 434. Lastly, "the court should award 'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'" McAfee, 738 F.3d at 88 (internal citations omitted).

### A. Plaintiffs' Claim for Attorneys' Fees Must Be Reduced for Time Spent On Unsuccessful Claims.

The lodestar amount is properly reduced to account for unsuccessful claims of the prevailing party. Hensley, 461 U.S. at 435-37. Specifically, the court must "subtract fees for

hours spent on unsuccessful claims unrelated to successful ones." McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. Va. 2013) (internal citations omitted).

In both Veasey and Messmer, Plaintiffs were unsuccessful in their attempts to name a proper State defendant or gain any relief against the State. On July 31, 2015 and August 5, 2015, this Court granted Defendants McCrory, Cooper and Perry's motion to dismiss Plaintiffs' complaints for failure to state a claim. [5:14-cv-00369, DE # 58; 5:15-cv-00097, DE # 40]. Any and all time expended by Plaintiffs in this regard must be excluded. [Attached hereto as Ex. A are the Plaintiffs' billing records with the improperly billed services highlighted. The highlighted tasks include unsuccessful claims as well as services improperly billed under the Lodestar method discussed *Infra.*][2] In Veasey, Plaintiffs filed an unsuccessful request for Preliminary Injunction and unsuccessfully attempted to amend their Complaint to name the proper State defendants. [5:14-cv-00369, DE # 32, 33] In Messmer the entire action was unnecessary and unsuccessful as to any State defendant. Plaintiffs' claims for attorneys' fees must be reduced for these unsuccessful claims.

Additionally, Plaintiffs filed a combined 6 request for extensions of time. Hours that are not properly billed to one's client also are not properly billed to one's adversary. Hensley, 461 U.S. at 434. The State should not be required to pay attorneys' fees for counsel's failure to respond in a timely manner. Plaintiffs have expended over 3.5 hours requesting extensions from the Court and those hours should be excluded. Also, in Veasey, numerous "conversations" and "conferences" between counsel, particularly with out-of-state counsel, are duplicative and billed by both attorneys. These hours would not (and indeed, should not) be billed to a client, and therefore must be excluded.

---

[2] It appears for overlapping issues Williams Mullen "split" their billing time between the two matters. If a task took two hours to complete, one hour was billed to Veasey and one hour billed to Messmer.

13

### B. Plaintiffs' Counsel Have Failed to Provide the Court With a Sufficient Fee Breakdown to Meet Their Burden of Supporting Their Fee Request.

The records submitted by counsel feature multiple examples of "block billing practices." [State Ex. A] "'[B]lock billing' can make it hard for a court to review a fee application which repeatedly references many of the same tasks in undifferentiated and large blocks of time, see, e.g., Project Vote/Voting for Am., Inc. v. Long, 887 F. Supp. 2d 704, 716 (E.D. Va. 2012)." Jiangmen Kinwai Furniture Decoration Co. v. IHFC Props., LLC, 2015 U.S. Dist. LEXIS 145352 (M.D.N.C. Oct. 27, 2015). This Court has recognized that a practice of "block billing" may serve as a basis for reduction of attorneys' fees. "Although 'block billing' is not prohibited, it simply does not provide the court with a sufficient breakdown to meet [the applicant's] burden to support its fee request in specific instances.' Project Vote/Voting for Am., Inc. v. Long, 887 F. Supp. 2d 704, 716 (E.D. Va. 2012)." EEOC v. Womble Carlyle Sandridge & Rice, LLP, 2014 U.S. Dist. LEXIS 38219, 10-11 (M.D.N.C. Mar. 24, 2014) (10% reduction for block billing); see, Uzzell v. Friday, 618 F. Supp. 1222, 1226 (M.D.N.C. 1985) (25% reduction for block billing). In addition to "block billing," Plaintiffs submitted billing records replete with entries that are vague and difficult to assess for reasonableness. For example, many billing entries features ambiguous descriptions such as "strategy call," "docket management," "attention to," "telephone conference," "analysis" and others. [See State Ex. A] Such descriptions are insufficient to support the award sought, and should likewise result in a per centum reduction the Court determines to be appropriate.

In summary, a significant reduction in attorneys' fees due from the State is appropriate in these two cases. While the exact calculation of the hours to be redacted from the fees' request is difficult to decipher given the billing records presented, a significant reduction is well within the Court's sound discretion under these circumstances.

WHEREFORE, the State of North Carolina respectfully requests that the Court enter an order denying Plaintiffs' request for attorneys' fees or in the alternative reduce the amount of reasonable attorneys' fees due to Plaintiffs from the State of North Carolina (a total hourly reduction of 99.6 hours to 124.3 hours and a monetary reduction of $33,366.50 to $49,433.57).

Respectfully submitted the 21st day of December, 2015.

>ROY COOPER
>Attorney General
>
>/s/ Charles G. Whitehead
>Charles G. Whitehead
>Special Deputy Attorney General
>N.C. Bar No. 39222
>Email: cwhitehead@ncdoj.gov
>N.C. Department of Justice
>Post Office Box 629
>Raleigh, North Carolina 27602-0629
>Telephone: (919) 716-6840
>Facsimile: (919) 716-6758
>*Counsel for State of North Carolina*

# CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel and parties of record as follows:

Camden R. Webb
Williams Mullen
301 Fayetteville St., Suite 1700
P. O. Box 1000
Raleigh, NC 27601
*Counsel for Plaintiff Kirsten Messmer and Local Rule 83.1 Counsel for Plaintiffs Felicity M. Todd Veasey and Second Amendment Foundation, Inc.*

Hal F. Askins
J. Joy Strickland
N.C. Dept. of Justice
9001 Mail Service Center
Raleigh, NC 27699-9001
*Counsel for Defendants Governor Pat McCrory, Attorney General Roy Cooper and Frank L. Perry*

Andrew H. Erteschik
N.C. State Bar No. 35269
aerteschik@poynerspruill.com
P.O. Box 1801
Raleigh, NC 27602-1801
Telephone: 919.783.2895
Facsimile: 919.783.1075
*Counsel for Sherriff Brindell B. Wilkins and Sherriff Donnie Harrison*

David G. Sigale
Law Firm of David G. Sigale, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, IL 60137
dsigale@sigalelaw.com
*Lead Counsel for Plaintiffs Felicity M. Todd Veasey and Second Amendment Foundation, Inc.*

This the 21st day of December, 2015.

/s/ Charles G. Whitehead
Charles G. Whitehead

Courtesy copy mailed to:

Macy Fisher
U.S. District Court
Eastern District of North Carolina
310 New Bern Avenue, Room 574
Raleigh, NC 27601