IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:14-CV-369-BO

| | |
|---|---|
| FELICITY M. VEASEY and SECOND AMENDMENT FOUNDATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> BRINDELL B. WILKINS, JR. in his official Capacity as Sheriff of Granville County, North Carolina, *et al.* <br> Defendants. | **ORDER** |

This matter is before the Court on plaintiffs' motion for attorney's fees, which is ripe for adjudication. For the following reasons, plaintiffs' motion is granted.

BACKGROUND

Plaintiffs Felicity Veasey and the Second Amendment Foundation filed suit in this Court via 42 U.S.C. § 1983, to challenge the constitutionality of North Carolina General Statute § 14.415–12 (the Statute), which required a person to demonstrate American citizenship prior to obtaining a concealed carry permit in North Carolina. In April 2015, the Court granted plaintiff's motion for a preliminary injunction and preliminarily enjoined defendants from, *inter alia*, enforcing the citizenship requirement of NCGS 14–415.12(a)(1) against lawful permanent residents. Defendants did not appeal, which is unsurprising, given that Sheriff Wilkins conceded that the Statute was unconstitutional at the hearing on the preliminary injunction.

Plaintiff applied for her concealed carry permit on May 1, 2015. Sheriff Wilkins granted the permit on June 9, 2015. On August 5, 2015, Governor McCrory signed House Bill 562, which amended the Statute to eliminate its citizenship requirement, into law. Two days later, Sheriff Wilkins filed a motion to dismiss the instant lawsuit as moot. The Court granted the

motion, but retained jurisdiction to decide the issue of attorney's fees. The Court also allowed the State of North Carolina (the State) to intervene following the Court's July 31, 2015, order holding that "any fees awarded would be assessed against the Sheriff in his official capacity, to be paid by the State."

Plaintiffs request attorney's fees pursuant to 42 U.S.C. § 1988 in the amount of $92,0350.50 and costs in the amount of $3,073.46. The State objects, arguing first that plaintiffs are not prevailing parties within the meaning of § 1988, and in the alternative, that a substantial fee reduction is warranted.

## DISCUSSION

1. <u>42 U.S.C. § 1988</u>

Typically, there is "a general practice of not awarding fees to a prevailing party absent explicit authority." *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994). Section 1988 creates such authority, providing that the Court may "allow the prevailing party, other than the United States, a reasonable attorney's fee . . . ." 42 U.S.C. § 1988(b). The State relies on *Smyth v. Rivero*, 282 F.3d 268 (4th Cir. 2002), to argue that a plaintiff who is awarded a preliminary injunction and subsequently obtains full relief due to a change in the defendant's position does not qualify as a prevailing party under § 1988. *Id.* at 277. In response, plaintiffs argue that *Smyth* is contrary to the Supreme Court's decision in *Lefemine v. Wideman*, 133 S. Ct. 9 (2012) (per curiam).

As far back as 1983, the Supreme Court found that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (citation omitted). In *Smyth*, however, the Fourth Circuit

determined that the preliminary injunction entered by the district court did not satisfy this prevailing party standard. *Smyth*, 282 F.3d at 277. Importantly, *Smyth* was decided under a preliminary injunction standard which required only an abbreviated examination of the merits as set forth in *Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189, 195 (4th Cir. 1997). Under the *Blackwelder* standard, the likelihood of success requirement was to be considered only after a balancing of hardships and only under the "grave or serious questions" standard. *Id.* at 195–96. The Fourth Circuit relied heavily on the "less stringent assessment of the merits of claims that are part of a preliminary injunction context" in deciding that the preliminary injunction did not satisfy the prevailing party standard of § 1988(b). *Smyth*, 282 F.3d at 277. In particular, the court found that "such relief [is] an unhelpful guide to the legal determination of whether a party has prevailed" because "[a] plaintiff's burden to show a likelihood of success on the merits, in other words, varies according to the harm the plaintiff would be likely to suffer absent an injunction." *Id.*

Since *Smyth* was decided, the standard for obtaining a preliminary injunction has changed significantly. Following the Supreme Court's decision in *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008), to succeed on a preliminary injunction, a plaintiff must "clearly demonstrate that [he] will *likely succeed* on the merits," regardless of the harm he is likely to suffer absent an injunction. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009), *vacated on other grounds*, 59 U.S. 1089 (2010) (emphasis in original). Accordingly, following *Winter*, the Fourth Circuit's reasoning in *Smyth* is less persuasive, as the court relied heavily on *Blackwelder* to find that a preliminary injunction is "an unhelpful guide to the legal determination of whether a party has prevailed." *Smyth*, 282 F.3d at 277. This is particularly true in light of *Lefemine*, whose facts strongly parallel those of this case.

3

In *Lefemine*, the plaintiff brought an action pursuant to 42 U.S.C. § 1983 against several police officers he claimed violated his First Amendment rights by threatening to give him a ticket for disturbing the peace for conducting demonstrations involving graphic signs. 133 S. Ct. at 10. The district court "permanently enjoined defendants from engaging in content-based restrictions on [Lefemine's] display of graphic signs under similar circumstances." *Id.* at 11. It also denied plaintiff's motion for attorney's fees. *Id.* The Fourth Circuit Court of Appeals affirmed, finding that "the relief awarded did not alter the relative positions of the parties . . . and merely ordered defendants to comply with the law and safeguard Lefemine's constitutional rights it the future." *Id.* The Supreme Court summarily reversed the Fourth Circuit in a *per curiam* opinion, finding that Lefemine "brought this suit in part to secure an injunction to protect himself from the defendants' standing threat of sanctions. And he succeeded in removing that threat." *Id.* In sum, "[b]efore the ruling, the police intended to stop Lefemine from protesting with his signs; after the ruling, the police could not prevent him from demonstrating in that manner." *Id.*

Here, Ms. Veasey wanted a concealed carry permit. As in *Lefemine*, plaintiffs brought this action to secure an injunction preventing defendants from infringing on Ms. Veasey's constitutional rights by enforcing an unconstitutional law. Plaintiffs succeeded. Moreover, not only did plaintiffs succeed in obtaining an injunction, Ms. Veasey succeeded in obtaining a concealed carry permit after Sheriff Wilkins conceded that the Statute was unconstitutional. While *Lefemine* dealt with a permanent injunction, and the injunction here, as in *Smyth*, was only a preliminary injunction, the reasoning in *Lefemine* counsels that the key question is whether a plaintiff succeeded in obtaining a judicially-sanctioned benefit. *Lefemine*, 133 S. Ct. at 11. The question is one of function, not of form. As plaintiffs point out, following logic of *Smyth* and

4

requiring a final merits ruling is a form over substance requirement incompatible with *Lefemine's* functional approach.

The Court concludes that the Fourth Circuit's holding in *Smyth* that a plaintiff who is awarded a preliminary injunction cannot constitute a prevailing party under § 1988 is untenable in light of *Lefemine*, the changed merits standard following *Winter*, and the facts of this case. Here, the Court analyzed the merits of the claim and concluded that plaintiffs were likely to succeed. Indeed, Sheriff Wilkins even conceded that plaintiffs were likely to succeed. Accordingly, plaintiffs obtained a preliminary injunction. Before the preliminary injunction ruling, defendants intended not to give Ms. Veasey a concealed carry permit; after the ruling, Sheriff Wilkins issued her a concealed permit. The Court finds that the preliminary injunction constitutes success on a "significant issue in litigation" which achieved a benefit plaintiffs "sought in bringing suit," thus plaintiffs constitute prevailing parties. *Hensley*, 461 U.S. at 433. As the prevailing parties, plaintiffs are entitled to attorney's fees.

2. Amount of Fees

The Court now turns to the question of what fees are reasonable. Plaintiffs request $92,035.00 in fees. The State argues that any fee award should reflect a substantial reduction from that amount.

Calculating an attorney's fee award requires three steps. *See, e.g., McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). "First, the court must determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009).[1] The court then must "subtract fees for hours

---

[1] Factors to consider in determining the reasonableness of the hours and rate include:
(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by

5

spent on unsuccessful claims unrelated to successful ones." *Id.* at 244. Last, the Court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.* While there is a "strong presumption that the lodestar figure . . . represents a reasonable fee," *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), the burden rests on the fee applicant to establish the reasonableness of the requested rate and number of hours, *Hensley*, 461 U.S. at 433.

After taking into account the *Johnson* factors, the Court finds that counsel's requested time is reasonable. Representation began in April 2014, and the complaint was filed in June 2014. As plaintiffs note, the Sheriff's litigation strategy dictated the direction of the case. After conceding that the Statute was unconstitutional, the Sheriff refused to pay any fees that might be awarded. Due to this decision, all of the subsequent litigation was over what party would be held responsible for any fee award. Although the Sheriff's concession on the merits implies that the issue itself was straightforward, his chosen litigation strategy was the catalyst for the subsequent work done by plaintiffs. Had the Sheriff conceded financial responsibility, none of the further litigation would have ensued. Accordingly, the Court finds it appropriate to include time spent by plaintiff on responding to motions by and litigation strategy of opposing counsel.

The Court also finds unpersuasive the State's argument that plaintiffs should not be compensated for hours spent working on any claims against the State defendants because those

---

the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.
*Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983) (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).


6

Case 5:14-cv-00369-BO   Document 86   Filed 01/26/16   Page 6 of 9

claims were unsuccessful. The Court ordered plaintiffs to name certain state officers in response to the Sheriff's argument. It would be inequitable to penalize plaintiffs for following the Court's orders, particularly given that the orders were given at defendants' urging. In short, the case required a significant amount of labor and time. Additionally, Second Amendment cases, such as this one, are not particularly straightforward. It has only been seven years since the Supreme Court decided *District of Columbia v. Heller*, 554 U.S. 570 (2008). The area of law surrounding the Second Amendment is nowhere near settled, as is made clear by the Sheriff's defense strategy and the hours spent by counsel on a case where the parties agreed on the merits of the case.

The results obtained further weigh in favor of a full award of attorneys' fees. Plaintiffs successfully obtained a preliminary injunction, and six weeks later, the North Carolina General Assembly amended the Statute to cure the constitutional defect that was the subject of this lawsuit. It appears to the Court that because of the instant lawsuit, Ms. Veasey, and other lawful permanent resident aliens like her, now are able to obtain concealed carry permits. Similarly, the experience, reputation, and ability of the attorneys weigh in favor of a full award. Both plaintiffs' attorneys have significant experience in this particular area of the law, as evidenced by their respective declarations.

While the State argues that the Court should discount 3.5 hours spent on motions for extension of time, the Court can find no authority that bars a party from recovering reasonable time spent drafting and filing motions for extensions of time. In fact, there a number of cases in which courts have allowed a party to recover for time spent on motions for extension of time. *Moshir v. Automobili Lamborghini Am. LCC*, 927 F. Supp. 2d 789, 801 (D. Ariz. 2013); *Amaro v. Specialized Loan Servicing, LLC*, 8:10-CV-1729, 2011 WL 6181918, at *3 (M.D. Fla. Dec.

7

13, 2011); *Robinson v. Fetterman*, 387 F. Supp. 2d 432, 436 (E.D. Pa. 2005). The Court finds that 3.5 hours on six motions for extension of time is not unreasonable.

The State further argues that plaintiffs have engaged in block billing that is vague and difficult to assess for reasonableness. Block billing is the practice of "grouping, or 'lumping,' several tasks together under a single entry without specifying the amount of time spent on each particular task." *Guidry v. Clare*, 442 F. Supp. 2d. 282, 294 (E.D. Va. 2006). Plaintiffs time records do not reflect block billing. While some entries include multiple tasks, the entries break down the exact amount of time spent on each task. Nor does the Court find the entries too vague to decipher. Given the context of each entry, it is clear what task is being billed. Accordingly, the Court declines to exercise its discretion to reduce the time, instead finding that the *Johnson* factors weigh in favor of 165.9 hours of work by Williams Mullen and 77.5 hours of work for out-of-state counsel. There is no need to subtract fees for hours spent on unsuccessful claims, as discussed *supra*.

When considering what rates are reasonable, the Court looks at the community in which the Court resides. *See, e.g., Rivers v. Ledford*, 666 F. Supp. 2d 603, 608 (E.D.N.C. 2009). The *Johnson* factors to be considered, where applicable, are

> (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* (citation omitted). Here plaintiffs submitted evidence that the rates counsel charged are reasonable both within the realm of Second Amendment litigation and in the realm of litigation in the Raleigh, North Carolina, area. Furthermore, Mr. Sigale has litigated similar cases in federal court and received his hourly rate of $500 in five other cases. Moreover, the State does

8

not challenge the market rates. Accordingly, the Court finds that the rates proposed by plaintiffs are reasonable in light of the *Johnson* factors.

The costs incurred by plaintiffs are detailed in counsels' declarations. The State does not contest the amounts detailed therein. The Court finds that the incurred costs as set forth in the declarations are reasonable and that plaintiffs are entitled to recover said costs.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for attorney's fees and costs [DE 64] is GRANTED in the amount of $92,035.00 in fees and $3,073.46 in costs.

SO ORDERED, this 25 day of January, 2016.

_____
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE